## WELLS-GARDNER & CO. v. HELVERING.

### No. 6927.

United States Court of Appeals for the District of Columbia.

Argued Dec. 13, 1937.

Decided Feb. 7, 1938.

Ellsworth C. Alvord, of Washington, D. C., and E. H. McDermott, of Chicago, Ill., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Morrison Shafroth, Arthur H. Fast, and Ellis N. Slack, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

Petitioner, Wells-Gardner & Co., is an Illinois corporation organized in 1925. It is engaged in the business of manufacturing and selling radio receivers and accessories. On and after May 1, 1929, its entire capital stock was owned by the Gulbransen Company, also an Illinois corporation. Gulbransen is engaged in the manufacture and sale of pianos and player pianos. Gulbransen kept its books upon the calendar year basis, Wells-Gardner upon the fiscal year basis, ending June 30. On September 10, 1929, Wells-Gardner filed its separate income tax return for the fiscal year ended June 30, 1929, showing thereon a tax of $2,386.59. On March 15, 1930, Gulbransen filed its separate income tax return for the calendar year 1929 showing a net loss and no tax liability. On May 1, 1930, Gulbransen applied to the Commissioner for permission

to change its accounting period from the taxable year ended December 31, 1930, to the taxable year ending June 30, 1930. It also requested permission to file a consolidated return at June 30, 1930, to include twelve months of the operations, July 1, 1929, to June 30, 1930, of its subsidiary Wells-Gardner and six months of its own operations, January 1 to June 30, 1930. The Commissioner denied the application on the ground that there was no authority for accepting a consolidated return filed on that basis, and on September 15, 1930, Wells-Gardner filed with the collector its separate income tax return for the fiscal year ended June 30, 1930, showing thereon a tax of $9,739.95. The following October 30 Wells-Gardner made application to the Commissioner for permission to change its accounting period from the taxable year ended June 30 to the taxable year ended December 31, stating that the change was desired in order to make its accounting period conform to that of Gulbransen, of which it was a subsidiary and with which it desired to file a consolidated return. Gulbransen at the same time asked permission to file a consolidated return for itself and Wells-Gardner for the calendar year ending December 31, 1930, stating that such return would only include the operations of Wells-Gardner for the period July 1 to December 31, 1930. The Commissioner replied that section 141(a) of the Revenue Act of 1928, 45 Stat. 791, 831, 26 U.S.C.A. § 141 and note,[1] granted affiliated corporations the privilege of making a consolidated return for the year 1929 or any subsequent taxable year in lieu of separate returns and that specific permission was not required. He further advised Gulbransen as follows:

"Under article 10 of Regulations 75, the privilege of making a consolidated return is exercised at the time of filing the return of the parent corporation.

"In regard to the proper preparation of a consolidated return for the calendar year 1930, since Wells-Gardner and Company closes its books on the basis of a fiscal year ending June 30, article 14 of Regulations 75 provides that the taxable year of the parent corporation shall be considered as the taxable year of the affiliated group which makes a consolidated return, and the consolidated net income must be computed on the basis of that taxable year.

"Article 13 (a) of Regulations 75 provides that except for changes in an affiliated group by way of additions of new companies becoming affiliated or of elimination of old companies ceasing to be affiliated, a consolidated return must include the income of the parent and of each subsidiary for the entire taxable year. Accordingly, the income of Wells-Gardner and Company, for the period January 1 to June 30, 1930, should be included in the consolidated return to be filed for the calendar year 1930 and its return for the fiscal year ending June 30, 1930, should be amended so as to cover the period from July 1 to December 31, 1929, only."

Subsequently and on May 15, 1931, Gulbransen, with the written consent of Wells-Gardner, filed a consolidated return including therein the incomes and deductions of both companies for the calendar year 1930. Wells-Gardner's consent included an agreement to be bound by the provisions of Regulations 75.

The controversy here grows out of the fact that for the period July 1 to December 31, 1929, Wells-Gardner had a substantial net income in excess of all credits, but for the following six months, that is to say, for the period January 1 to June 30, 1930, it had a substantial net loss. For the period July 1 to December 31, 1930, it again had a substantial net income. The deficiency involved here was determined by the Commissioner by amending Wells-Gardner's last separate return so as to cover only the period July 1 to December 31, 1929. The object of this was to make the consolidated return of Wells-Gardner

---

[1] "Sec. 141. *Consolidated Returns of Corporations—1929 and Subsequent Taxable Years.*

"(a) *Privilege to file consolidated returns.*—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year, in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent."

and Gulbransen cover as to each corporation the full calendar year 1930, and in order to accomplish this it was necessary to disregard Wells-Gardner's prior separate return for the first six months of that year (1930); and this was in accordance with the Commissioner's letter to Gulbransen quoted above, in which he said: "The income of Wells-Gardner and Company, for the period January 1 to June 30, 1930, should be included in the consolidated return to be filed for the calendar year 1930 and its [separate] return for the fiscal year ending June 30, 1930, should be amended so as to cover the period from July 1 to December 31, 1929, only."

Wells-Gardner now insists that, notwithstanding the action of its parent with its consent and acquiescence, the consolidated return for the calendar year 1930 was unauthorized. The theory of this is that Wells-Gardner, having made an election to file separate return covering the period to June 30, 1930, was thereafter precluded from joining in a consolidated return covering any portion of that fiscal year. In other words, that a deficiency cannot validly be determined in this case for a portion only of petitioner's taxable year, and that the Commissioner's action in confining Wells-Gardner's separate return to the last six months of 1929 is unauthorized. The question must be answered in the light of Regulations 75.

Subsection (b) of section 141, Revenue Act of 1928, 26 U.S.C.A. § 141 and note, gives the Commissioner authority, with the approval of the Secretary, to prescribe such regulations as he may deem necessary to determine, compute, assess, collect, and adjust the tax liability of an affiliated group of corporations and of each corporation of the group in such manner as to reflect clearly the income and prevent avoidance of tax liability. Regulations 75 provide, among other things, that all the affiliated group must consent to be bound by the regulations; that in such case the consolidated return must be made at the time of filing the return of the parent corporation; that the consolidated return must be made for the taxable year of the parent corporation; and that the consolidated net income must be computed on the basis of the taxable year of the parent corporation. This is precisely what occurred in this case, and the required conditions are exactly those which the Commissioner notified Gulbransen would be enforced if a consolidated return was filed. Unless,

therefore, the regulations are to be set aside as invalid, the action of the Commissioner and of the Board must be sustained.

The contention of Wells-Gardner, as we have seen, is to the effect that up until the time it consented with its parent to file a consolidated return it had a valid legal right to file a separate return and that, having elected to file a separate return for its previous fiscal year period ending June 30, 1930, that election was irrevocable and binding alike upon its parent and upon itself; and that no provision of law permitted it thereafter to change its period of return and join in a consolidated return covering a part of the period previously covered in its separate return, and, on the basis of this argument, that the Commissioner's regulations are invalid. There might be room for argument in favor of Wells-Gardner's position under the provisions of the Revenue Acts of 1921, 1924, and 1926, 42 Stat. 227, 43 Stat. 253, and 44 Stat. 9, for in all these revenue acts an election to file a separate return requires the elector to continue to make returns on that basis until Commissioner shall give his permission to a change; but under section 141(a) of the 1928 act, as the Board points out, the filing of a separate return by one of an affiliated group does not constitute an election to continue to file such return subject to change only by the order of the Commissioner. A consolidated return may be filed at once or it may be postponed to a subsequent year, and in the meantime separate returns may be filed. The only compulsion exists where an election is made to file a consolidated return. Once that election is made under the 1928 act, as well as under the former acts, the change is subject to the control of the Commissioner, and the act of filing a consolidated return is, by agreement required of all parties, made subject to the Commissioner's regulations; and these, as we have seen, authorize the computation and ascertainment of the tax on the basis of the parent corporation's taxable year, and that is what the Commissioner seeks here to enforce.

We held in a previous case under the 1928 act that Regulations 75 were in all respects valid, Wishnick-Tumpeer v. Helvering, 64 App.D.C. 295, 77 F.2d 774, and we said in that case that where affiliated corporations avail of the privilege permitting them under section 141(a) of the

act to file consolidated returns, and do file them, they consent to the regulations and may not subsequently question them. In this case Gulbransen's taxable period was the calendar year. The regulations provide that the taxable year of the parent shall be the taxable year of the affiliate, and this involved the filing by Wells-Gardner of a like return for the full calendar year 1930 if it was desired by both corporations to avail of the privilege to file a consolidated return. In apportioning its previous tax year and imposing a tax based on its income from July 1 to December 31, 1929, the Commissioner was doing no more than adjusting the return in such manner as clearly to reflect the income and prevent avoidance of tax liability; and this the statute authorizes. To hold otherwise would permit Wells-Gardner to deduct its loss incurred in the period January 1 to June 30, 1930, from both its income for its fiscal year 1930 and its income for the calendar year 1930, thus accomplishing a double deduction of losses. Under its consolidated return its liability for its calendar year 1930 was nil, and the deficiency which the Commissioner assessed grew out of its profit for the last six months of the year 1929, which the Commissioner treated as a single period for taxation purposes.

Since this assessment is made, as we think, in accordance with the regulations, and since the regulations, as we think, are well within the power granted by Congress to the Commissioner by section 141(a), and since to recognize petitioner's contention would be to permit it and its parent company by the method adopted to make a double deduction of a single loss, we have no doubt of our duty to reject petitioner's contention and to affirm the decision of the Board.

Affirmed.