NEW YORK IMPORT AND EXPORT EXCHANGE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56467. Filed April 30, 1957.

*Fred R. Tansill, Esq.*, for the petitioner.
*Andrew Kopperud, Esq.*, for the respondent.

KERN, *Judge:* On December 17, 1954, respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1947 in the sum of $493,501.54. In the statement attached to the notice of deficiency respondent explained this action by saying that a purported consolidated return filed for the taxable year by petitioner's parent corporation (Empire South American Industries, Inc.), which included therein the income of petitioner, "did not qualify as a consolidated return pursuant to the requirements of Section 141 of the Internal Revenue Code of 1939." He further explained his action as follows:

This return did not list Empire Tractor Company, a company wholly owned by Empire South American Industries, Inc., as a member of the affiliated group, nor include its income therein. The Empire Tractor Company did not consent to the filing of the 1947 consolidated return by its parent corporation, but on the contrary, filed a separate return in which its 1947 income was reported. There was no compliance with the mandatory requirement of section 141 that all corporations which at any time during the taxable year were members of the consolidated group prior to the last day prescribed by law for filing said return consent to all the consolidated return regulations.

The tax liability of New York Import and Export Exchange Corporation whose income was included in the so-called consolidated return for the calendar year 1947, therefore, is determined herein on the basis of a separate return.

The statement attached to the deficiency notice also contains the following:

In making this determination of your income tax liability, careful consideration has been given to the report of examination dated April 15, 1953; to your protest dated September 29, 1953, and to the statements made at the conferences held on May 24, 1954 and August 12, 1954.

The petitioner alleges that respondent "erred in computing petitioner's income tax liability for the calendar year 1947 on the basis of a separate return" and "in failing to determine petitioner's income tax liability for the taxable year 1947 on a consolidated basis by including petitioner's income in that of a consolidated group of affiliated corporations consisting of petitioner, Empire South American Industries, Inc. (the common parent), Cairns Corporation, and Empire Tractor Company."

A stipulation of facts was filed by the parties. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. In substance, the facts are as follows:

Petitioner is a corporation organized under the laws of the State of New York on October 7, 1946. Its principal office during the taxable year here involved was at 521 Fifth Avenue, New York, New York, and its present address is c/o Cenco Corporation, 1700 West Irving Park Boulevard, Chicago, Illinois.

During the taxable year involved herein the petitioner was engaged principally in the purchase of agricultural commodities for export.

During the taxable year 1947 all of the petitioner's issued and outstanding stock, except for qualifying shares, was owned by Empire South American Industries, Inc., hereinafter referred to as South American.

Empire Tractor Corporation, hereinafter referred to as Tractor, during the period here involved had 25,000 shares of preferred stock and 10,000 shares of common stock issued and outstanding. South American purchased stock of Tractor as follows:

| Date | No. of shares preferred | No. of shares common |
| --- | --- | --- |
| Mar. 24, 1947 | | 3,000 |
| Apr. 11, 1947 | 5,000 | |
| July 16, 1947 | | 1,250 |
| Aug. 1, 1947 | | 5,750 |
| Aug. 20, 1947 | 15,000 | |
| Sept. 22, 1947 | 5,000 | |

South American continued to own all of the issued and outstanding preferred and common stock of Tractor until at least December 31, 1948.

On July 31, 1947, South American purchased 339,700 shares of the total of 400,000 shares of issued and outstanding capital stock of Cairns Corporation, hereinafter referred to as Cairns, and this stock was retained by South American until at least December 31, 1948.

During the taxable year 1947 South American, Cairns, and petitioner computed their respective incomes on a calendar year basis, using an accrual method of accounting. Tractor computed its income on the basis of a fiscal year ended July 31, using an accrual method of accounting.

South American filed a so-called consolidated income tax return for the taxable year 1947 purportedly including its income and the incomes of petitioner and Cairns, but not including any income for Tractor. There is no explanation in the record of this case for the failure of South American to include the income and deductions of Tractor in the so-called consolidated return. A tentative return was

filed in the name of "Empire South American Industries, Inc. and Subsidiaries" on March 15, 1948, with the collector of internal revenue for the third district of New York. An "Affiliations Schedule," Form 851, and two "Returns of Information and Authorization and Consent of Subsidiary Corporation Included in a Consolidated Income Tax Return," Form 1122, were a part of the tentative return. This affiliations schedule lists South American as the common parent corporation and petitioner and Cairns as subsidiary corporations. Petitioner and Cairns each executed one of the Forms 1122, which are dated March 1948. A final return was filed, in accordance with an extension of time granted by the collector, on July 12, 1948, with the collector of internal revenue for the third district of New York. This return was prepared by Noah Gallop and Company and was notarized by Elizabeth J. Rubino. An "Affiliations Schedule," Form 851, and two "Returns of Information and Authorization and Consent of Subsidiary Corporation Included in a Consolidated Income Tax Return," Form 1122, were a part of this return. The "Affiliations Schedule" lists South American as the common parent corporation and petitioner and Cairns as subsidiary corporations. Petitioner and Cairns each executed one of the Forms 1122, which are dated July 1948. This return was the first income tax return of South American because it was a completely new corporation which had been incorporated on January 7, 1947. The space provided on the return for an answer to the question "Did the corporation own at any time during the taxable year 50 per cent or more of the voting stock of another corporation either domestic or foreign?" was blank. There was no mention or indication on the return of the existence of any affiliate other than the two included in the return. This return did not reveal the affiliation of Tractor or its income or deductions. The return disclosed on its face a consolidated income tax liability of $314,914.82. It also disclosed a consolidated net income of $787,287.04; South American reported therein a net loss of $55,088.24, Cairns reported a net loss of $437,975.81, and petitioner reported a net income of $1,280,351.09. The record does not disclose the income or loss of South American, Cairns, or the so-called consolidated return as finally determined.

South American, as common parent, filed so-called consolidated income tax returns for the taxable years 1948 and 1949 with the collector of internal revenue for the third district of New York. The return for 1948 reflected no consolidated tax liability and showed a consolidated net loss of $1,375,109.57. As reported, the net losses consisted of the following: South American's net loss, $1,025,173.35; petitioner's net loss, $112,352.80; Cairns's net loss, $237,583.42. The record does not disclose the income or loss of South American, Cairns, or the so-called consolidated return as finally determined. The return for 1949 reflected no consolidated tax liability and showed a con-

solidated net loss of $163,644.34 before net operating loss deduction on account of net operating loss carryovers. As reported, the net losses consisted of the following: South American's net loss, $4.83; petitioner's net loss, $89,416.07; Cairns's net loss, $74,223.44. The record does not disclose the income or loss of South American, Cairns, or the so-called consolidated return as finally determined.

Tractor filed separate income tax returns for the fiscal years ended July 31, 1947, and July 31, 1948, with the collector of internal revenue for the first district of Pennsylvania. A tentative return for the fiscal year ended July 31, 1947, was filed on October 15, 1947. A final return for that fiscal year was filed, in accordance with an extension of time granted by the collector, on December 15, 1947. This final return was prepared by Noah Gallop and Company and was notarized by Elizabeth J. Rubino. It stated that it was not a consolidated return and that South American owned 100 per cent of Tractor's issued stock. This final return did not show the collector's office in which the income tax return of South American was filed or the address of South American. This final return was the first one filed because Tractor commenced operations on August 1, 1946. The separate return filed by Tractor for the fiscal year ended July 31, 1947, disclosed no tax liability and showed a net loss of $3,993.73. The record does not show the income or loss of Tractor for this year as finally determined.

A final return of Tractor for the fiscal year ended July 31, 1948, was filed on May 20, 1949. This return was prepared by Noah Gallop and Company and was notarized by Elizabeth J. Rubino. The separate return filed by Tractor for the fiscal year ended July 31, 1948, disclosed no tax liability and showed a loss of $760,912.81. The record does not show the income or loss of Tractor for this year as finally determined.

Tractor did not file a duplicate original of Internal Revenue Service Form 1122, "Return of Information and Authorization and Consent of Subsidiary Corporation Included in a Consolidated Income Tax Return," nor was a duplicate original thereof attached to the so-called consolidated income tax return for 1947. There is no explanation in the record of this case as to the reason for the failure of Tractor to file a Form 1122.

Respondent did not issue a specific formal notice to South American with reference to the fact that the income of Tractor was not included in the so-called consolidated income tax return filed by South American for the taxable year 1947 or of the fact that Tractor did not file Form 1122 for the period here involved. There is no explanation in the record of this case as to the reason for the failure of respondent to issue such a notice.

The question presented for our determination may be stated as follows: Is respondent's determination of deficiency against peti-

tioner on the basis of a separate return invalid as premature by reason of his failure to give notice pursuant to Regulations 104, section 23.18 (a),[1] to petitioner's parent corporation filing a so-called consolidated return for the taxable year which had included the income of petitioner but not the income of another affiliated corporation, and to which it had given its consent but to which the other affiliated corporation had not, to the effect that such "consolidated return" had failed to include the income of the other affiliated corporation and that such other affiliated corporation had not filed Form 1122 as required by the regulations?

The pertinent statutory provisions are found in subsections (a) to (d), inclusive, of section 141 of the Internal Revenue Code of 1939.[2]

---

[1] The wording of this regulation is practically the same as that which refers to section 1502, I. R. C. 1954. See T. D. 6140, sec. 1.1502–18, 1955–2 C. B. 317, 330.

[2] SEC. 141. CONSOLIDATED RETURNS.

(a) PRIVILEGE TO FILE CONSOLIDATED INCOME AND EXCESS-PROFITS-TAX RETURNS.—An affiliated group of corporations, shall, subject to the provisions of this section, have the privilege of making consolidated income- and excess-profits-tax returns for the taxable year in lieu of separate returns. The making of consolidated returns shall be upon the condition that the affiliated group shall make both a consolidated income-tax return and a consolidated excess-profits-tax return for the taxable year, and that all corporations which at any time during the taxable year have been members of the affiliated group making a consolidated income-tax return consent to all the consolidated income- and excess-profits-tax regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return. The making of a consolidated income-tax return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated returns shall include the income of such corporation for such part of the year as it is a member of the affiliated group. In the case of a corporation which is not a member of the affiliated group after March 31, 1942, of the last taxable year of such group which begins before April 1, 1942, such corporation shall not be considered a member of the affiliated group for consolidated income-tax-return purposes for such year but shall be considered a member of such group for consolidated excess-profits-tax-return purposes for such year, and the consent required in the case of such corporation shall relate only to the consolidated excess-profits-tax regulations.

(b) REGULATIONS.—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making consolidated income- and excess-profits-tax returns and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income- and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability. Such regulations shall prescribe the amount of the net operating loss deduction of each member of the group which is attributable to a deduction allowed for a taxable year beginning in 1941 on account of property considered as destroyed or seized under section 127 (relating to war losses), and the allowance of the amount so prescribed as a deduction in computing the net income of the group shall not be limited by the amount of the net income of such member.

(c) COMPUTATION AND PAYMENT OF TAX.—In any case in which consolidated income-tax and excess-profits-tax returns are made or are required to be made, the taxes shall be determined, computed, assessed, collected, and adjusted in accordance with the regulations under subsection (b) prescribed prior to the last day prescribed by law for the filing of such returns; except that the tax imposed under section 15 or section 204 shall be increased by 2 per centum of the consolidated corporation surtax net income of the affiliated group of includible corporations. Only one specific exemption as provided in section 710 (b) (1) shall be allowed for the entire affiliated group of corporations for the purposes of the tax imposed by Subchapter E of Chapter 2.

(d) DEFINITION OF "AFFILIATED GROUP".—As used in this section, an "affiliated group" means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

(1) Stock possessing at least 95 per centum of the voting power of all classes of stock

Counsel on brief have called our attention to sections 23.1 (a), 23.10 (a) (1), 23.12 (b) and (c), as well as 23.18 (a) of Regulations 104.[3]

and at least 95 per centum of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations ; and

(2) The common parent corporation owns directly stock possessing at least 95 per centum of the voting power of all classes of stock and at least 95 per centum of each class of the nonvoting stock of at least one of the other includible corporations.

As used in this subsection, the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

(e) DEFINITION OF "INCLUDIBLE CORPORATION".—As used in this section, the term "includible corporation" means any corporation except—

(1) Corporations exempt under section 101 from the tax imposed by this chapter.

(2) Insurance companies subject to taxation under section 201 or 207.

(3) Foreign corporations.

(4) Corporations entitled to the benefits of section 251, by reason of receiving a large percentage of their income from sources within possessions of the United States.

(5) Corporations organized under the China Trade Act, 1922.

(6) Regulated investment companies subject to tax under Supplement Q.

(7) Any corporation described in section 725 (a), or in section 727 (e), (g), or (h) (without regard to the exception in the initial clause of section 727), but not including such a corporation which has made and filed a consent, for the taxable year or any prior taxable year, beginning after December 31, 1943, to be treated as an includible corporation. Such consent shall be made and filed at such time and in such manner as may be prescribed by the Commissioner with the approval of the Secretary.

[3] SEC. 23.1. Privilege of Making Consolidated Returns.

(a) Sections 141 and 152 give to the corporations of an affiliated group the privilege of making a consolidated return for the taxable year in lieu of separate returns. This privilege, however, is given upon the condition that all corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to these regulations, and any amendments thereof duly prescribed prior to the making of the return and applicable to such year ; and the making of the consolidated return is considered as such consent.

SEC. 23.10. Exercise of Privilege.

(a) When Privilege Must be Exercised.

(1) The privilege of making a consolidated return under these regulations for any taxable year of an affiliated group must be exercised at the time of making the return of the common parent corporation for such year. Under no circumstances can such privilege be exercised at any time thereafter. The filing of separate returns for a taxable year does not constitute an election binding upon the corporations in subsequent years. If the privilege is exercised at the time of making the return, separate returns cannot thereafter be made for such year. (See, however, section 23.18, relating to the improper inclusion in the consolidated return of the income of a corporation.)

SEC. 23.12. Making Consolidated Return and Filing Other Forms.

(b) Authorizations and Consents Filed by Subsidiaries.

Each subsidiary must prepare duplicate originals of Form 1122, consenting to these regulations and authorizing the common parent corporation to make a consolidated return on its behalf for the taxable year and authorizing the common parent (or, in the event of its failure, the Commissioner or the collector) to make a consolidated return on its behalf (as long as it remains a member of the affiliated group), for each year thereafter for which, under section 23.11 (a), the making of a consolidated return is required. One of such forms as prepared by each subsidiary shall be attached to the consolidated return, as a part thereof ; and the other shall be filed, at or before the time the consolidated return is filed, in the office of the collector for the district prescribed for the filing of a separate return by such subsidiary. No such consent can be withdrawn or revoked at any time after the consolidated return is filed.

(c) Affiliations Schedule Filed by Common Parent Corporation.

The common parent corporation shall prepare Form 851 (Affiliations Schedule), which shall be attached to the consolidated return, as a part thereof.

SEC. 23.18. Failure to Comply with Regulations.

(a) Exclusion of a Subsidiary from Consolidated Return.

If there has been a failure to include in the consolidated return the income of any subsidiary, or a failure to file any of the forms required by these regulations, notice thereof

The petitioner's contention is that "the Commissioner may not determine a separate deficiency as to this petitioner for 1947 for the reason that no notice as required by the consolidated regulations was ever issued which would have afforded the affiliated group of corporations an opportunity of curing the defects in the consolidated return filed for 1947." Its argument is adequately portrayed by the following quotations from petitioner's brief:

Sec. 23.18 (a) must be read both as a necessary limitation upon the strict requirements of Sec. 23.10 (a) as well as a device to supplement and perfect the purpose of the latter section. The latter section provides that the privilege of making a consolidated return must be exercised at the time of making the return of the common parent corporation and cannot be exercised at any time thereafter. Once the election is made to file on a consolidated basis, a separate return cannot thereafter be made for such year. It would, therefore, appear that the section of the Regulations here involved must be read as permitting the correction of defects appearing on a consolidated return even though an irrevocable election to file a consolidated return is made when the return is filed and, technically speaking, these defects render the election void.

The problem here presented falls squarely within the literal language of Sec. 23.18 (a). Here there was a failure to include the income of a subsidiary in the consolidated return as well as a failure to file one of the forms required, by the consolidated Regulations. The section contains the word "shall" and thereby imposed a mandatory duty upon the Commissioner to advise the common parent, South American, of the defects in the consolidated return. The obvious purpose of this requirement is to afford a common parent the opportunity to cure the defects. That opportunity has not been accorded in this case. Had the appropriate notice been issued, then proper consolidated return could have been filed together with the requisite consent form. If these things had been done, then there would have been no consolidated tax liability and no consolidated deficiency. This is so because of the fact that the petitioner here was the only member of the affiliated group which had net income which would have been more than offset by current losses of the other affiliated corporations together with the net operating losses incurred in subsequent years by the affiliated group (in 1948 and 1949) which would have been available on a two-year carry-back basis. (See Exs. 1–A through 5–E).

By failing to carry out his mandatory duty the Commissioner himself has in effect precluded the correction of the defects. He has simply leapfrogged over the intervening administrative procedure for correction and here attempts to tax this petitioner with a separate deficiency. In reality and equitably there should be no tax due from the affiliated group for the year 1947.

\* \* \* \* \* \* \*

Nor is it an adequate justification to state that the Commissioner had no way of knowing that Tractor should have been included but was not included in the consolidated return. This type of situation could always exist where Sec. 23.18 (a) is involved. Moreover, the separate returns of Tractor filed for the fiscal years 1947 and 1948 both clearly indicated that all of its stock was

shall be given the common parent corporation by the Commissioner, and the tax liability of each member of the affiliated group shall be determined on the basis of separate returns unless such income is included or such forms are filed within the period prescribed in such notice, or any extension thereof, or unless under section 23.11 a consolidated return is required for such year.

owned by the common parent, South American. True, the separate return of Tractor was filed with a different Collector's office than that where the consolidated return was filed. Yet all of the facts were within the peculiar knowledge of the Commissioner or his servants, and all that was involved was a matter of coordination. In addition, audit would have and must have disclosed the defects complained of. In any event, there is nothing in the Regulation itself or in its underlying rationale which would require that the Commissioner be placed on notice of an obvious defect at the time the consolidated return is filed. The significant fact is that the Commissioner quite definitely knew of the defects *prior to the time that the separate statutory notice was issued* to this petitioner for 1947.

Respondent's position on the issue before us is adequately portrayed by the following quotations from his brief:

The Commissioner was not required to give notice in this case.

Section 23.18 (a) of Regulations 104 literally, simply and logically means that if a common parent includes in a consolidated return an affiliate which does not file a Form 1122 *or* if an affiliate files a Form 1122 but is not included in the consolidated return, *then* the Commissioner, having knowledge of a defect, shall send an appropriate notice to the common parent. There are two separate items involved: (1) inclusion of a subsidiary in a consolidated return; and (2) the filing by a subsidiary of a Form 1122. Section 23.18 (a) applies only where one of these two things has been done and the other has not been done. Said section reads, "If there has been a failure to include in the consolidated return the income of any subsidiary, or a failure to file any of the forms required by these regulations, notice thereof shall be given the common parent corporation by the Commissioner * * *." The section uses the disjunctive word "or" and not the conjunctive word "and".

In the instant case there was a failure both to include the income of a subsidiary in the so-called consolidated return and a failure to file a Form 1122, required by the regulations.

Petitioner's interpretation of section 23.18 (a) of Regulations 104 is unreasonable as the facts in the instant case well illustrate.

Section 141 of the Internal Revenue Code of 1939 and the consolidated regulations repeatedly state that the effective date for consolidated return purposes is the due date of the return. Section 141 (a) states that all corporations consent to the consolidated regulations prescribed prior to the last day prescribed by law for filing such return. Section 141 (c) states that taxes shall be determined, computed, assessed, collected and adjusted in accordance with the regulations prescribed prior to the last day prescribed by law for the filing of the return. Section 23.10 of Regulations 104 states that the privilege of making a consolidated return must be exercised at the time of making the return of the common parent corporation; the privilege cannot be exercised thereafter. Section 23.12 of Regulations 104 states that each subsidiary file a duplicate original of Form 1122 in the office of the collector for the district prescribed for the filing of a separate return by such subsidiary at or before the time the consolidated return is filed; the consent cannot be withdrawn or revoked after the consolidated return is filed.

For the purposes of the instant case, the facts, consents, acts and omissions as of the filing date of the consolidated return are controlling and subsequent events are not pertinent.

\* \* \* \* \* \* \*

It is apparent that the Commissioner, at the filing date of the so-called consolidated return and on the basis of the information before him, had no possible way of knowing that said return was imperfect. It is equally apparent that the Commissioner could not be expected to give notice in regard to a matter on which he had no information.

\*         \*         \*         \*         \*         \*         \*

The interpretation suggested by petitioner would place an impossible and illogical burden on the Commissioner. The Commissioner would be required, at any and all times, to determine from independent evidence whether or not a consolidated return is proper and complete, and if he determined it was not complete, he would then need, perhaps years later, to give notice to the common parent.

The respondent's position is that the regulation states that he should give notice in a situation where he has knowledge, from the face of the consolidated return or from the filing of a Form 1122, that there is an imperfection in the consolidated return. This is reasonable.

Petitioner in its reply brief points out that the only defects in a consolidated return which, under the regulations, may be cured by amendment are the two referred to in section 23.18 $(a)$, *supra*, and that this may be done only if respondent gives the notice required by that section.

Both parties stress the importance of regulations under the statutory provisions for consolidated returns, and both assume the binding effect of these regulations upon the Commissioner as well as taxpayers.

We have set out *in extenso* the arguments of the parties upon the precise question before us because the issue is completely novel and because there are no authorities which are even remotely helpful in its resolution.

The gist of respondent's argument is that the notice which is the prerequisite to the determination of petitioner's tax liability on the basis of a separate return is required only on the occurrence of one of two conditions, i. e., (1) the failure to include in the consolidated return the income of any subsidiary, and (2) the failure to file any of the forms required by the regulations; that if both of these conditions occur rather than one of them, no notice is required of the Commissioner prior to his determination of petitioner's tax liability on the basis of a separate return; and that the justification of this construction of the regulations is that unless the income of all subsidiaries is included in the consolidated return or unless all of the forms required are filed, the Commissioner will not have the information which will make it possible for him to issue the notice made mandatory by section 23.18 $(a)$.

We are unable to agree with this argument. If an obligation is conditioned upon the occurrence of either condition A or condition B, it is our opinion that the occurrence of both conditions will give rise to the obligation. For example, if a man obligates himself to take some

action upon condition that the obligee give to him five dollars or a new hat, and the obligee gives to him both five dollars and the new hat, it cannot be doubted that the man may not deny his obligation on the ground that both conditions occurred rather than one. While the use of the words "and/or" might be more meticulously precise in such an undertaking and in the section of the regulations under discussion than the word "or," it is not only objectionable from the standpoint of literary style but it is in our opinion unnecessary when referring to conditions to an obligation (as distinguished from alternative obligations) as being inferred or understood.

Neither is the practical reason for respondent's construction of this section of the regulations valid. If the respondent had information sufficient to lead him to make the determination of deficiency here involved, obviously he had information sufficient to permit him to issue the notice which is, by the regulations, a prerequisite to the determination of the tax liability of petitioner on the basis of a separate return. In this case the statement attached to the notice of deficiency indicates that respondent had the required information over a year prior to the determination of deficiency herein.

A consideration of the statute and the regulations relating to consolidated returns, including in such consideration the fact that section 23.18 (a) of Regulations 104, or its equivalent, has been in effect for over 15 years without legislative change, leads us to conclude that there is a congressional intent that where there has been a failure to include in a consolidated return the income of any subsidiary or a failure to file any forms required by the regulations the respondent may determine the tax liability of a member of the affiliated group on the basis of a separate return, but only after the giving of notice required by section 23.18 (a), and that the word "or" as used above in this sentence should be construed as equivalent to "and/or." Accordingly, we decide the issue presented in favor of petitioner.

Reviewed by the Court.

*Decision will be entered for petitioner.*

TIETJENS, *J.*, concurs in the result.
OPPER and PIERCE, *JJ.*, dissent.

---

TURNER, *J.*, dissenting: By subsection (b) of section 141, Congress did grant broad powers to the Commissioner to prescribe such regulations as were deemed necessary to assure the determination, assessment, and collection of the income and excess profits tax of "any affiliated group of corporations making consolidated * * * returns and of each corporation in the group * * *, and in order to prevent

avoidance of such tax liability." Congress did not, however, grant to the Commissioner the power to define or name the corporations whose income should be permitted consolidated treatment, but by subsections (d) and (e), specifically stated its own definition of an "affiliated group of corporations," and by subsection (a) made it clear that the filing of a return covering and consolidating the income of each and every corporation in an affiliated group, as so defined, was a prerequisite to consolidated treatment of the income of the group. Patently, therefore, there is no such thing within the contemplation of section 141 as a "partial" consolidated return, or, stated differently, a return which covers only a part of the affiliated group of corporations is not a consolidated return within the meaning of the statute. It would accordingly seem to me to be axiomatic that any regulation which according to its language appears to change, relax, or waive the conditions which Congress itself has unequivocally set up as a prerequisite to the consolidated treatment of corporate income must either be held to be of no force or effect, or if susceptible of an interpretation which is not in conflict with the statute in respect of which it has been promulgated, it should be so interpreted.

It is true, of course, that the Commissioner in section 23.18 of his regulations did provide that in the event of "failure to include in the consolidated return the income of any subsidiary * * *, notice thereof shall be given to the common parent * * * and the tax liability of each member of the affiliated group shall be determined on the basis of separate returns unless such income is included * * * within the period prescribed in such notice." By the regulation, the Commissioner has in language having a mandatory connotation and directed to himself, indicated that in the event of failure to include the income of a subsidiary in the return filed, as Congress prescribed it must be, he will, by notice to the common parent, provide the group with a second chance to bring itself within the statute. But, even so, there is a noticeable absence of any language to the effect that a failure to give such notice will entitle those corporations which were included in the return filed to consolidated treatment of their income. A consolidated return covering all of the corporations in an affiliated group, as Congress has defined it, is still, according to the statute, that without which consolidated treatment of the income may not be had. And in the absence of clear and unequivocal language to such effect, I know of no rule which permits us, through construction, to ascribe to a regulation the doing of that which the statute says may not be done, particularly where, as in this instance, to do so would be to abrogate conditions which Congress has specifically prescribed. Surely the rule of reenactment of the statute without change does not go that far. And yet, that is what I understand the effect of the Opinion here to be.

Though it does appear that the respondent failed to give formal notice of the defect in the return filed, it is to me apparent on the facts that through petitioner the common parent did de facto receive notice thereof, but having had such de facto notice, has not filed nor indicated any intention to file a consolidated return for the affiliated group. Without any showing of an attempt to cure the defect, and confessing that no consolidated return within the meaning of the statute has ever been filed, the petitioner comes to this Court resisting the determination of the deficiency against it as an individual corporation, seeking thereby to obtain the same effect, taxwise, from the abortive return as would flow from a proper return under the statute.

A resulting question may, of course, be, how may a group of corporations which fully intended to comply with the statute, but through inadvertence failed to do so, avoid or defend against determinations against them individually, as in this case, if the first notice of defect in the return filed is by way of a notice of deficiency. The answer, it seems to me, is in the regulation itself. By its terms, the regulation permits the filing of a proper return "within the period prescribed in such notice," and in the instant case, it does not appear that the respondent, even today, has ever prescribed the date beyond which the affiliated group herein may not take such curative action. Through the notice of deficiency, information of the defect has been present in the affiliated group since petitioner's receipt of the notice, and certainly there was ample time for the filing of the required return between the receipt of the notice of deficiency and the trial herein. The introduction of satisfactory evidence that such a return had been filed, even though belatedly, would, I should think, have been a complete defense for petitioner in this proceeding.

As matters now stand, no effective consolidated return has been filed, or offered for filing, even to this date, and I do not understand there is any indication of record of any intent to file such a return. Accordingly, it would seem to me that the return filed could, at the most, be regarded as a reporting by each of the corporations covered of its individual income, and there being no consolidated return, the respondent, under the statute, would have no alternative but to determine the tax of the said corporations separately and individually. If the return which was filed is not to be so regarded, then, on the facts, it would appear that we have here a no return case, and are left with no alternative but to enter judgment covering the tax of the instant corporation on an individual basis.

BRUCE and WITHEY, *JJ.*, agree with this dissent.