LANDY TOWEL & LINEN SERVICE, INC. OF READING, PA., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86288–86292.   Filed May 18, 1962.

*Brady O. Bryson, Esq., Alfred J. McDowell, Esq.,* and *Daniel S. Knight, Esq.,* for the petitioners.
*Edward L. Newberger, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Landy Towel & Linen Service, Inc. of Lancaster, Pa., Docket No. 86289; Landy Towel & Linen Service, Inc. of Pottsville, Pa., Docket No. 86290; Landy Towel & Linen Service, Inc. of Williamsport, Pa., Docket No. 86291; and Landy Towel & Linen Service, Inc. of Wilmington, Del., Docket No. 86292.

OPINION.

DRENNEN, *Judge:* Respondent, on January 26, 1960, in separate notices of deficiency, determined deficiencies in income tax against petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 86288 | Landy Towel & Linen Service, Inc. of Reading, Pa. | 1954 | $17,626.60 |
| | | 1955 | 2,755.88 |
| | | 1956 | 417.29 |
| | | *Fiscal year ended June 30—* | |
| 86289 | Landy Towel & Linen Service, Inc. of Lancaster, Pa. | 1954 | 5,565.45 |
| 86290 | Landy Towel & Linen Service, Inc. of Pottsville, Pa. | 1954 | 4,192.32 |
| 86291 | Landy Towel & Linen Service, Inc. of Williamsport, Pa. | 1954 | 2,639.44 |
| 86292 | Landy Towel & Linen Service, Inc. of Wilmington, Del. | 1954 | 3,097.82 |

Petitioners in Docket Nos. 86289, 86290, 86291, and 86292 are all wholly owned subsidiaries of petitioner in Docket No. 86288.

The only issue remaining for decision in this consolidated proceeding is whether respondent's determination of the tax liability of all the petitioners on the basis of a consolidated return for the period February 1 to December 31, 1954, and for the years 1955 and 1956 was correct.[2]

The case was submitted on a stipulation of facts and exhibits attached. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. A summary of those facts follows.

Petitioners Landy Towel & Linen Service, Inc. of Reading, Pa. (hereinafter sometimes called the parent corporation), Landy Towel & Linen Service, Inc. of Lancaster, Pa., Landy Towel & Linen Service, Inc. of Pottsville, Pa., Landy Towel & Linen Service, Inc. of Williamsport, Pa., and Landy Towel & Linen Service, Inc. of Wilmington, Del. (hereinafter sometimes called the subsidiary corporations), are corporations organized and existing, with one exception,

---

[2] For reasons that will become apparent, notices of deficiency were sent to the subsidiaries for their fiscal years ending June 30, 1954, only. The only adjustment proposed was the assertion of the accumulated earnings tax, sec. 102, I.R.C. 1939, and sec. 531, I.R.C. 1954, against each subsidiary. The notice of deficiency mailed to the parent corporation proposed certain miscellaneous adjustments to taxable income for each of the years and also added to income for the year 1954 the net income of each of the subsidiaries for the period February 1, 1954, the date of affiliation, to June 30, 1954. The return filed by the parent for 1954 included the net income of the subsidiaries only for the period July 1 to December 31, 1954. Petitioners have conceded the miscellaneous adjustments in the parent's income and respondent has conceded the accumulated earnings tax determined against the subsidiaries. The parties also stipulated to the effect that if the Court should hold that the income tax liability of the petitioner should be determined on the basis of a consolidated return, then the net income of the subsidiaries for the period February 1, 1954, to June 30, 1954, should be added to the consolidated income reported by the parent for the year 1954 and should be eliminated from the income reported by the subsidiaries on their returns for the fiscal years ending June 30, 1954.

under the laws of the Commonwealth of Pennsylvania, with the principal office of each at Blair and Schuylkill Avenues, Reading, Pennsylvania. Landy Towel & Linen Service, Inc. of Wilmington, Del. was organized and exists under the laws of the State of Delaware.

The parent corporation filed a Form 1120, U.S. Corporation Income Tax Return, on a calendar year basis for each of the years 1954, 1955, and 1956 with the district director of internal revenue at Philadelphia, Pennsylvania. Each of the subsidiary corporations filed a separate corporate income tax return for the fiscal year July 1, 1953, to June 30, 1954, with the district director of internal revenue at Philadelphia, Pennsylvania.

M. Marshall Landy, Lewis Landy, and Abraham J. Oberson organized all the subsidiary corporations in 1952. In 1953 the same individuals acquired in equal shares all the outstanding stock of the Bijou Hosiery Mills, Inc. The name of this corporation was changed to Landy Towel & Linen Service, Inc. of Reading, Pa. (the parent corporation in this case). On February 1, 1954, these three individuals contributed to the capital of the parent corporation all the stock of the subsidiary corporations.

The Form 1120 filed by the parent corporation for the year 1954 reported all the income of the parent corporation for 1954 and all the income of the subsidiary corporations for the period July 1 to December 31, 1954, but did not include the income of the subsidiaries from February 1, 1954, the date of affiliation, to June 30, 1954. The Forms 1120 filed by the parent corporation for 1955 and 1956 reported the total income of the parent corporation and of each subsidiary corporation for those years. A completed Form 851, Affiliations Schedule, listing all the subsidiary corporations and the parent corporation was attached to each Form 1120. The question on the first page of the Form 1120 for 1954: "Is this a consolidated return?" was answered "Yes." It was unanswered on the returns for 1955 and 1956. All the riders attached to each of these returns had at the top of the page the caption "(Consolidated Return)" followed by the name of the parent corporation and each of the subsidiary corporations.

The Forms 1120 filed by the parent corporation for the years 1954, 1955, and 1956 set forth as tax liability for those years the amounts of $17,601.27, $12,223.86, and $26,152.88, respectively. The tax liability on each return was computed at the consolidated return rate of 54 percent. Sec. 1503(a), I.R.C. 1954.[3] The tax liability as determined on these returns was paid in full by the parent corporation and allocated among the books of the affiliated group as follows:

---

[3] All statutory references will be to the Internal Revenue Code of 1954 unless otherwise indicated.

BOOK ALLOCATIONS OF FEDERAL INCOME TAX

|  | 1954 | 1955 | 1956 |
|---|---|---|---|
| Federal income tax per returns | $17,601.27 | $12,223.86 | $26,152.88 |
| Book allocations to — | | | |
| Parent company | | | |
| Lancaster subsidiary | 7,691.75 | 4,412.81 | 6,695.14 |
| Pottsville subsidiary | 5,069.17 | 4,278.35 | 8,970.44 |
| Williamsport subsidiary | 2,692.99 | 2,640.35 | 6,930.51 |
| Wilmington subsidiary | 2,147.36 | 892.35 | 3,556.79 |
| Merged member of the affiliated group—Robert-Carlton Corporation | | | |
|  | 17,601.27 | 12,223.86 | 26,152.88 |

When the subsidiary corporations were formed they all adopted a fiscal year for Federal income tax purposes, ending June 30. Each subsidiary filed a separate income tax return for the taxable year ending June 30, 1954. Each of the subsidiary corporations paid the tax computed to be due on its return and they had not up to the date of trial received a refund of tax for that taxable year. As of December 31, 1954, each subsidiary corporation changed its accounting period to the calendar year. These changes were made without the permission of respondent. As of the date of trial, respondent had not objected to these changes.

None of the subsidiary corporations filed separate income tax returns for the period July 1 to December 31, 1954, and the calendar years 1955 and 1956. Up to the time of trial, none of the subsidiary corporations had filed an authorization and consent form, Form 1122, and they had refused to do so when orally requested to do so by respondent's agent. At the time of trial, none of the subsidiary corporations had received a notice of any kind from respondent with respect to its failure to file Form 1122.

During the years 1954, 1955, and 1956, M. Marshall Landy, Lewis Landy, and Abraham J. Oberson were the sole shareholders of the parent corporation. During all times here material, the offices of president and of secretary-treasurer of the parent corporation and of each of the subsidiary corporations were held by either Oberson or Lewis Landy.

Respondent in a notice of deficiency sent by registered mail to the parent corporation determined deficiencies in income tax against the parent corporation and the subsidiary corporations for the years 1954, 1955, and 1956. In determining these deficiencies, respondent treated the Forms 1120 filed by the parent corporation for 1954, 1955, and 1956 as elections by the parent corporation and the subsidiary corporations of the privilege of filing a consolidated return for those years and determined their tax liability on that basis. The petition filed by the parent corporation in this Court alleged that the deficiency determination was in error, that respondent erroneously deter-

mined its tax liability on a consolidated basis, that it had overpaid its income for each of the years in question, and that it was entitled to a refund.

Respondent in separate notices of deficiency determined deficiencies in income tax against each of the subsidiary corporations for the period July 1, 1953, to June 30, 1954. Each subsidiary corporation filed a petition in this Court alleging that respondent's determination was in error and further alleging that if respondent's determination of its tax liability on a consolidated basis with the parent corporation for the period February 1 to June 30, 1954, was proper, then each overpaid its income tax for the fiscal year ending June 30, 1954, and that each is entitled to a refund.

Section 1501[4] affords an affiliated group of corporations the privilege of electing to have their tax liability determined on the basis of consolidated returns. Election of this privilege for any year is made at the time of the filing of the return of the parent corporation and if an election is made at this time, separate returns cannot thereafter be made. Sec. 1.1502–10(a), Income Tax Regs.;[5] *Alameda Inv. Co.* v. *McLaughlin*, 33 F. 2d 120 (C.A. 9, 1929); *Manchester Savings Bank & Trust Co.*, 34 B.T.A. 1008 (1936). See 8 Mertens, Law of Federal Income Taxation, sec. 46.20. The privilege of filing a consolidated return is conditioned upon all members of the affiliated group consenting to the consolidated return regulations. The law provides that the making of a consolidated return shall be considered as such consent. Sec. 1501; sec. 1.1502–1, Income Tax Regs. Also see *Ilfeld Co.* v. *Hernandez*, 292 U.S. 62 (1934);[6] *Commercial Shearing & Stamping Co.*, 36 T.C. 433 (1961).

We think it is clear from the facts in this case that the filing of the consolidated return by the parent corporation for the year 1954 was intended to be and was in fact an election by the affiliated group of corporations to have their tax computed on the basis of a consolidated return and that the election was authorized and joined in by each of the subsidiary corporations.

The consolidated return filed by the parent corporation stated on the face thereof that it was a consolidated return, a Form 851, Affiliations Schedule, listing all the subsidiary corporations and the parent

[4] Sections 1501 and 1502 contain the same provisions and almost the identical language as sections 141(a) and 141(b) of the Revenue Act of 1928, which were the basic consolidated return statutes from 1929 through to the 1954 Code.

[5] All references to the regulations will be to the consolidated return regulations promulgated in T.D. 6140, 1955–2 C.B. 317. These regulations, for the purposes of the issue presented in this case, are the same as Regulations 129 prescribed under section 141(b), I.R.C. 1939.

[6] The decisions of the Court of Appeals for the Tenth Circuit in this case are found in 66 F. 2d 236 (1933) and 67 F. 2d 236 (1933). The decision of the District Court was not officially reported but may be found in 1932 C.C.H. Fed. Tax Rep. par. 9449 and 15 A.F.T.R. 819 (D. N. Mex. 1932). There is no mention in any of the lower court decisions of the filing of any forms other than the tax return.

corporation was attached thereto, the income of the subsidiary corporations from July 1 to December 31, 1954,[7] was included therein, the tax was computed at the consolidated return rate of 54 percent, the subsidiary corporations did not file separate returns for their fiscal years starting July 1, 1954, nor for subsequent years, the subsidiary corporations changed their accounting periods to the calendar year, the accounting period of the parent, as of the end of the year 1954, the consolidated tax was allocated to the members of the affiliated group, and the parent continued to file consolidated returns for the group for years subsequent to 1954, all as required by the law and the regulations when an election is made to report on a consolidated return basis. There is no evidence that any of the subsidiaries expressly refused to join in the consolidated return of the group—in fact, their officers were the same as the officers of the parent. The only thing that was not done as required by the regulations was that the subsidiaries failed to file the authorization and consent forms, Form 1122, as required by section 1.1502–12(b) of the regulations. However, both section 1501 of the Code and section 1.1502–1(a) of the regulations specifically provide that the making of a consolidated return shall be "considered as such consent." In view of the language of the Code and the last-mentioned section of the regulations, as well as the position of sections 1.1502–12 and 1.1502–18 of the regulations in what appear to be the administrative provisions of the regulations,[8] it seems obvious that the requirement that the subsidiaries file the authorization and consent forms is an administrative provision for the protection of the Commissioner, and that the failure of the subsidiary corporations to file those forms did not prevent petitioners in this case from making a valid election of the consolidated return privilege. The consolidated return regulations expressly provide that these forms may be filed after an effective election has been made. Sec. 1.1502–18(a), Income Tax Regs. See also *New York Import & Export Exchange Corporation*, 28 T.C. 269 (1957); *Ilfeld Co. v. Hernandez, supra; American Trans-Ocean N. Corp.* v. *Commissioner*, 229 F. 2d 97 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court; *Wells-Gardner & Co.*, 34 B.T.A. 1075 (1936), affd. 95 F. 2d 125 (C.A.D.C. 1938).

Petitioners' election of the consolidated return privilege was accepted by respondent and the tax liability of the parent corporation and the subsidiary corporations was determined and paid on a consolidated basis. Petitioners were bound by this election and they could not unilaterally repudiate it. *Alameda Inv. Co.* v. *McLaughlin*

---

[7] We consider that the failure of the consolidated return for the year 1954 to include the income of the subsidiaries for the period February 1, 1954, the date of affiliation, to June 30, 1954, was due to a misunderstanding of the law on the part of petitioners.

[8] See **T.D. 6140**, *supra.*

*supra; Manchester Savings Bank & Trust Co., supra.* Cf. *Maletis* v. *United States*, 200 F. 2d 97 (C.A. 9, 1952) ; *Sherman* v. *United States*, 141 F. Supp. 369 (E.D. Pa. 1956), affirmed per curiam 240 F. 2d 600 (C.A. 3, 1957). A mistake as to the consequences of an election freely taken does not lessen the binding character of the election. *Burke & Herbert Bank & Trust Co.*, 10 T.C. 1007 (1948). Having elected to file a consolidated return for 1954, a consolidated return must be filed for the affiliated group in subsequent years, absent the happening of one of the events specified in section 1.1502–11 of the regulations.

Petitioners claim, however, that the failure of the subsidiary corporations to file Forms 1122 renders their election void and that respondent is mandatorily required by section 1.1502–18(a) of the regulations to determine their tax liability for the years in question on the basis of separate returns. In our opinion, this section of the regulations, when considered in the context of the statute and the other provisions of the regulations, does not require the result sought by petitioners here.

Section 1.1502–10(a) of the regulations expressly provides that the election of the consolidated return privilege for any year is made at the time of the filing of the return of the parent corporation and once that election is made, separate returns cannot thereafter be made. As discussed above, the filing of the consolidated returns by the parent corporation constituted an election by the affiliated group to have their tax computed on a consolidated basis and also constituted the consent required by the statute of all members of the affiliated group.

Section 1.1502–18(a) of the regulations provides in part as follows:

If there has been a failure to include in the consolidated return the income of any subsidiary, or a failure to file any of the forms required by these regulations, notice thereof shall be given the common parent corporation by the Commissioner, and the tax liability of each member of the affiliated group shall be determined on the basis of separate returns unless such income is included and such forms are filed within the period prescribed in such notice, or any extension thereof * * *

The juxtaposition of paragraphs 10(a) and 18(a) indicates that paragraph 18(a) was not intended to provide taxpayers with a means of repudiating an election to file a consolidated return, once made, but rather was to provide taxpayers a means of curing any defects in their consolidated returns without vitiating their election. Any other construction of paragraph 18(a) would put it in conflict with paragraph 10(a) and sanction nonobservance of the regulations as a mode by which an affiliated group can postpone an election of the consolidated return privilege until some time after the time prescribed by the regulations.

The purpose of paragraph 18(a) is to permit the Commissioner to require compliance with the requirements of the regulations. If the

requirements have not been met then the Commissioner may notify the taxpayer of the defects. It is only where such notice has been issued and taxpayer has refused to comply that there is any authority in the law or regulations for computation of the tax liability of an affiliated group that has filed a consolidated return on a separate return basis. Cf. *New York Import & Export Exchange Corporation, supra.* However, where, as here, the taxpayers have elected to have their tax computed on a consolidated basis and have signified their consent to the regulations by filing a consolidated return, and have included in the income reported on the consolidated return the income of the parent corporation and all affiliates, but have simply failed to file the consent forms, Form 1122, we do not think paragraph 18(a) requires the Commissioner to issue the notice, thus giving the taxpayers an opportunity to repudiate their election by their own dereliction after the election has already been exercised. The Commissioner may accept the return as filed or issue the notice and demand more detailed compliance. The Commissioner has accepted the return as filed here and we think that ends the matter.

*Smith Paper Co.*, 31 B.T.A. 28 (1934), affirmed sub nom. *Export Leaf Tobacco Co.* v. *Commissioner*, 78 F. 2d 163 (C.A. 2, 1935); *Lawyers Building Corporation*, 35 B.T.A. 540 (1937), affirmed sub nom. *George A. Fuller Co.* v. *Commissioner*, 92 F. 2d 72 (C.A. 2, 1937); and *Trinity Buildings Corporation of New York*, 40 B.T.A. 1315 (1939), which petitioners cite in their brief as support for their contention, are all clearly distinguishable from the instant case. In *Smith Paper Co.* two of the affiliates had filed separate returns in preceding years and, under the law as it existed then, were bound by this election to continue filing separate returns unless granted permission by the Commissioner to change. In *Lawyers Building Corporation* one of the affiliates had become bankrupt and the trustee in bankruptcy expressly refused to join in the consolidated return filed by the rest of the group. The Commissioner was upheld in computing the taxes of the members of the group separately because one of the group had expressly refused to comply with the consolidated return regulations. The *Trinity Buildings Corporation* case involved the same affiliated group as in the *Lawyers Building Corporation* case for a later year with the same result. The *New York Import & Export Exchange Corporation* case is also distinguishable from the instant case. In that case we held that the respondent could not void an election by an affiliated group to file a consolidated return and determine their tax liability on a separate basis until he had given notice and allowed them an opportunity to correct the defect in their return as prescribed in section 23.18(a), Regs. 104, a predecessor of section 1.1502-18(a), Income Tax Regs. The result sought by the affiliated group in its

reliance on this provision in the regulations in that case was consistent with the purpose for which we feel that regulation was intended and was consistent with the other provisions in the regulations. Furthermore, the result reached in the latter case apparently required computation of the taxpayers' income on a consolidated basis even though the income of one of the affiliated group was not included and that subsidiary did not file the consent forms.

We hold that the tax liability of petitioners should be computed on a consolidated basis; that the consolidated income should include the income of the subsidiary corporations from February 1, 1954, the date of affiliation; and that the income of the subsidiary corporations which is included in the consolidated income should be eliminated from the separate income of the subsidiaries for their fiscal years starting July 1, 1953.

*Decisions will be entered under Rule 50.*