**William H. GOODRICH and Llelven Goodrich, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**William H. GOODRICH and Llelven Goodrich, Respondents.**

**Nos. 15639, 15640.**

United States Court of Appeals Eighth Circuit.

April 25, 1957.

Maurice E. Stark, Fort Dodge, Iowa (Sewall Van Alstine, Gilmore City, Iowa, with him on the brief), for William H. Goodrich and Llelven Goodrich.

Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for Commissioner of Internal Revenue.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

These are petitions to review a decision of the Tax Court, 25 T.C. 1235. The

taxpayer[1] seeks reversal of the Court's redetermination that a deficiency existed in his income taxes for the calendar year 1949. The Commissioner has challenged the Court's allowance of some deductions in the taxpayer's favor. That petition is for protective purposes and requires consideration only in the event that the taxpayer's case is reversed.

The taxpayer was engaged in operating two agencies in the State of Iowa for the sale of farm implements. Until 1949, he had employed a hybrid accounting method in keeping his books and making his tax returns, using a cash basis as to his sales and an accrual basis as to the other elements of the business. Thus, for each year prior to 1949, his account and his return as to sales had consisted of the amount of his cash transactions and of the collections made on his bills receivable.

The Commissioner had not interposed any objection to the taxpayer's use of this method of accounting and tax return. And the Tax Court made the observation that "It is not at all evident that the petitioner's method of accounting, consistently applied, would result in tax consequences that would differ greatly over the years from a strict accrual method".

On January 1, 1949, however, the taxpayer changed his method of accounting to a strict accrual basis for all the operations of his business and used that method and basis in making his tax return for the year 1949. He made the change without seeking and obtaining the consent of the Commissioner thereto.

There were standing on his books, at the close of the year 1948, bills or accounts receivable, in the amount of $13,-812.86, on which as such, under his previous method of accounting and returning his sales-income, he had up to that time paid no income tax. The accounts had been set out in his 1948 return and shown as being, under his accounting method, excluded from his sales. He did not include them as sales-income in his return for 1949, because, under the accrual method of accounting which he was then adopting, they did not represent income from his operations for that year, and, under the method which he had made applicable to them in their accumulation, they would not become income until they were paid.

The Commissioner made an audit of the taxpayer's 1949 return in 1953 and held that the $13,812.86 accounts receivable which had accumulated from his operations in 1948 and previous years should be included in his gross income for the year 1949.

■ The Tax Court upheld the deficiency which the Commissioner thus determined existed for the year 1949, upon the grounds that, under Treasury Regulations 111, section 29.41–2, a taxpayer may not change his method of accounting without first obtaining the consent of the Commissioner thereto; that, as a condition of granting his consent, the Commissioner has the right to impose such terms and conditions as he deems appropriate to prevent any revenue loss or postponement which might otherwise result; and that—in the Tax Court's language—"a taxpayer who does not first obtain consent for a voluntary accounting change is subject to the same adjustment order as one who does".

This holding overlooks, we think, the nature and extent of the power which section 29.41–2 of the Regulations allows the Commissioner to exercise. It allows him to impose adjustments in relation to a taxpayer's income status of other years, only as a term or condition on which he will consent to a change in the taxpayer's method of accounting for purposes of the latter's current tax return. But it does not allow him to impose such adjustments in relation to the taxpayer's income status of other years, except as a

---

1. Husband and wife had filed a joint return, so that the wife also was made a party to the petition for review. The controversy is related to income from the husband's business, and we shall accordingly refer to him here as the taxpayer.

matter of agreement or acceptance on the taxpayer's part.

If the taxpayer refuses to agree to the terms or conditions so imposed and to accept the adjustments required by the Commissioner to be made, the result is in general to leave the situation simply as one in which the taxpayer is without legal right to make use of a change in his accounting method for purposes of his current taxability and return.

■ The language used in section 29.41-2 of the Regulations, in its here material portion, is as follows: "A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. * * * Application for permission to change the method of accounting employed and the basis upon which the return is made shall be filed within 90 days after the beginning of the taxable year to be covered by the return. * * * Permission to change the method of accounting will not be granted *unless the taxpayer and the Commissioner agree* to the terms and conditions under which the change will be effected". (Emphasis ours.)

As previously pointed out, the regulation does not purport to allow the Commissioner to subject any income to a deficiency assessment for a year other than that in which it properly is constituted or has a status as income, "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer", 26 U.S.C.A. (I.R.C.1939) § 41, and as to which taxability accordingly is created against it by the Code—except as the taxpayer has agreed that the Commissioner may so do. The language of the regulation is, "unless the taxpayer and the Commissioner agree".

It is not open to either the Commissioner or the taxpayer unilaterally to make a shift, whether of income or of outgo, to another year than that for which its tax status, "in accordance with

the method of accounting regularly employed in keeping the books of such taxpayer", has properly been created. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 286–287, 64 S.Ct. 596, 599, 88 L.Ed. 295.

Thus, even under the further provision of § 41 of the Code that, "if the method [of accounting] employed [by the taxpayer] does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income", we have held, as have other Courts of Appeals, that the Commissioner cannot, of his own accord, and over the objection of the taxpayer, impose adjustments which change the tax status of income, as previously existing, to a different year. Welp v. Commissioner, 8 Cir., 201 F.2d 128; Commissioner v. Mnookin's Estate, 8 Cir., 184 F.2d 89. See also Commissioner v. Dwyer, 2 Cir., 203 F.2d 522; Commissioner v. Frame, 3 Cir., 195 F.2d 166.

Here, under neither a cash nor an accrual method of accounting, could the bills receivable on hand from 1948 and previous years be claimed by the Commissioner to represent income for 1949 (except, of course, as they might be collected during that year).

■ The Commissioner argues that, since the taxpayer undertook to change his method of accounting without securing permission from the Commissioner thereto, he should be held to have impliedly agreed to accept whatever terms or conditions the Commissioner might see fit to impose upon him by way of appropriate adjustment. This contention seems to us to be sufficiently answered by the language of the regulation.

The regulation requires that a taxpayer who changes his method of accounting must secure the consent of the Commissioner "before computing his income upon such new method for purposes of taxation" and provides further that the Commissioner will not grant permission "unless the taxpayer and the

Commissioner agree to the terms and conditions under which the change will be effected". The natural implication of the expression "agree to *the* terms and conditions" (emphasis ours) is that particular terms and conditions may be imposed and that they are to be made known to the taxpayer by the Commissioner, as a basis for his acceptance or rejection. It would hardly be possible otherwise to claim that the taxpayer had agreed, not to an imposing of terms and conditions generally, but, within the language of the regulation, to "*the* terms and conditions".

In this connection, it is to be emphasized that there is nothing in the language of the regulation to suggest that, if a taxpayer fails to comply with the requirement for first obtaining permission from the Commissioner, he will as a penalty or as a consequence be deemed to have agreed by legal implication to whatever terms or conditions the Commissioner may see fit to impose.

Necessarily, the implication of agreement for which the Commissioner contends would have to constitute a legal and not a factual one. There could be in the situation no implied agreement of fact, for no terms and conditions existed on the part of the Commissioner, at the time the taxpayer filed his return, as a basis for making any implication or inference as to facts. The taxpayer could not at that time even know whether the Commissioner would be willing to give his consent. And no more could it be said that he was chargeable with knowledge in fact that, if the Commissioner should give his consent, he necessarily would impose terms and conditions, or that, if he did impose terms and conditions, they would be of a particular and exact nature.

We should doubt whether under the 1939 Code the regulations could competently, as a matter of proper tax administration, have been made to include a provision that, if a taxpayer changed his accounting method and filed his return on the basis thereof, without having sought and obtained the consent of the Commissioner, he would thereby, as a matter of agreement imposed upon him by legal implication, be subjecting himself to the possibility of an unknown, additional tax liability for the year involved, from whatever terms and conditions the Commissioner might see fit to require of him (including a shifting of the tax status existing as to any previous or potential income from another year) which the Commissioner might deem to constitute an appropriate adjustment against him. But we need not consider that question. It is a sufficient answer here to the argument made by the Commissioner that the regulations do not, either expressly or as a matter of reasonable implication, so provide.

The taxpayer's brief calls attention to the provision in section 29.41–2 of Regulations 111 that, "in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will reflect income except an accrual method", and to a special ruling of the Commissioner, dated January 5, 1945, 45 CCH par. 6129, 563 CCH par. 2982.492, to the effect that where inventories are necessarily used in a business, taxpayers are required to use the accrual method and no permission to change to that method is required.

It does not appear from the record that this question was raised before the Tax Court, except by way of attempted interjection in the taxpayer's motion for rehearing and reconsideration, filed after the Court had decided the case. This circumstance, in conjunction with the reversal result which is in any event commanded by what we have precedingly said, makes unnecessary any consideration of this aspect of the situation.

Moreover, we are not prepared to declare abstractly and absolutely that the requirement of the regulation for the use of an accrual method, where business inventories are involved, leaves no room for the taxpayer lawfully to have employed the hybrid method of accounting and return, which he here did, or no

power in the Commissioner to have allowed him, or to be able to require him to continue, to do so, on the facts and elements of his particular situation.

A measure of discretion and flexibility is essential and inherent in practical tax administration, so long as it does not amount to legal arbitrariness, unfair discrimination, or violation of a statutory provision. And on the permissibility which the Code intends generally in methods of accounting, as Mertens says, "The intention of the Code is, no doubt, to allow discretion and permit flexibility both to the taxpayer and to the Commissioner, and it would probably be impossible to administer the income tax according to any more rigid or explicit rule". 2 Mertens, Law of Federal Income Taxation, § 12.05a.

Again, on the matter of the taxpayer's right to have changed his method of accounting without the permission of the Commissioner, we similarly are not prepared to declare, on the abstraction of the Commissioner's 1945 special ruling alone, that the situation here was one in which the Commissioner was not entitled to take the position that taxpayer was required to obtain his consent, or in which the Commissioner could not refuse to give his consent, if the taxpayer chose to reject the terms and conditions which the Commissioner might undertake to impose. These questions we shall leave to a more specific and a more illuminating setting than the present record provides.

The Commissioner urges that, if the adjustment attempted by him cannot be made, the result will be that the accumulated bills receivable of the taxpayer's business will escape taxation as a matter of limitations. We are not persuaded that this is or can be the situation.

The accounts involved had had an income status created for them on a cash-realization basis, under the accounting method which the taxpayer had employed as to them. This established status of taxability for the particular accounts could hardly be said, we think, to have been altered by the taxpayer's change in his method of accounting designed to create a different status simply as to his future sales. The previous accounts were not assets which bore an inseparable relationship to his future sales, either as a matter of business operation or of tax payment, and economically the realization of income from them on the basis of their cash status would not in any way be effected by his accrual treatment of his future sales. The previously accumulated bills receivable were assets which he had treated and left as involving a realization of income to him when they were paid. As a matter of fact, the record indicates that he continued so to recognize them in the years subsequent to 1949, by reporting as income and paying tax on such cash as he realized from them in each year.

But even if the situation had been one in which a limitations escape could have occurred, this would not enable the Commissioner to make the reach that he attempted. It is part of the policy of our income-tax system to allow an honest taxpayer to escape the controversy and burden of any attempted deficiency assessments, through limitations.

It may be noted that the problem of effecting adjustments such as that which is here involved is one for which the Internal Revenue Code of 1954, § 481, 26 U.S.C.A., has attempted to provide at least a partial solution. But this is not of help or significance here, for, as Sen. Rep. No. 1622, 83rd Cong., 2nd Sess., p. 308, undertakes to make clear, the provisions for transitional adjustments contained in that Code are without application or relationship to "items that were, or should have been, under the proper method of accounting, taken into account as an income-producing factor for taxable years to which subtitle A of the 1954 Code does not apply". U.S.Code Cong. & Adm.News, 1954, p. 4947.

Since the taxpayer's case is being reversed, the deductions allowed in the taxpayer's favor, which were protectively

made the subject of the Commissioner's petition for review, are entitled to reconsideration by the Tax Court in their relation to the overthrowing of its decision.

The decision of the Tax Court is accordingly reversed, as to both petitions for review, and the cases will be remanded to it.

Reversed and remanded.