Stanford R. BROOKSHIRE and wife, Edith M. Brookshire, and Voris G. Brookshire, and wife, Helen M. Brookshire, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7977.

United States Court of Appeals Fourth Circuit.

Argued Nov. 13, 1959.

Decided Jan. 4, 1960.

Elton B. Taylor and F. T. Miller, Jr., Charlotte, N. C. (F. A. McCleneghan, Charlotte, N. C., on the brief), for petitioners.

Victor A. Altman, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

Petitioners Stanford R. Brookshire and Voris G. Brookshire are partners trading as Engineering Sales Company. The other petitioners are their wives. In 1952 the partnership voluntarily, without seeking or obtaining permission from the Commissioner of Internal Revenue, changed its method of keeping its books of account and its method of reporting its income for federal income tax purposes from the cash receipts and dis-

bursements method of accounting to the accrual method. The Tax Court sustained the action of the Commissioner requiring the partnership (1) to include in its 1952 income the monies collected in 1952 on accounts receivable existing as of 1 January 1952, representing sales made but not paid for in 1951, and (2) to reduce the cost of goods sold by that part of the inventory on hand 1 January 1952 which had been paid for and deducted from the partnership's income in prior years. The petition for review challenges those rulings.

The sections of the I.R.C. of 1939 and of T.R. 111 which bear upon the problem are set out in Note 1. The facts are set out in the careful opinion of the Tax Court, Atkins, J., 31 T.C. 1157, and may be summarized here.

The partnership originally operated as a manufacturer's agent, selling on a commission basis, taking no title to the

---

1. Internal Revenue Code of 1939:

"§ 22. Gross income.

\* \* \* \* \*

"(c) *Inventories.* Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income. \* \* \* "

26 U.S.C.1952 ed., Sec. 22.

"§ 41. General rule.

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. \* \* \* "

26 U.S.C.1952 ed., Sec. 41.

"§ 42. Period in which items of gross income included.

"(a) [As amended by Sec. 114 of the Revenue Act of 1941, c. 412, 55 Stat. 687] *General rule.* The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. \* \* \* " 26 U.S.C.1952 ed., Sec. 42.

"§ 43. Period for which deductions and credits taken.

"The deductions and credits \* \* \* provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', depend-

ent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. \* \* \* "

26 U.S.C.1952 ed., Sec. 43.

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939:

"Sec. 29.22(c)–1. Need of Inventories. —In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. \* \* \*

"Sec. 29.41–2. Bases of Computation and Changes in Accounting Methods.— Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. A method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with reasonable consistency. See section 48 for definitions of 'paid or accrued' and 'paid or incurred.' All items of gross income shall be included in the gross income for the taxable year in which they are received by the taxpayer, and deductions taken accordingly, unless in order clearly to reflect income such amounts are to be properly accounted for as of a different period. But see sections 42 and 43. See also section 48. For instance, in any case in which it is necessary to use an inventory, no method of accounting in regard to purchase and sales will correctly reflect income except an accrual method. \* \* \*

"The true income, computed under the Internal Revenue Code and, if the taxpayer keeps books of account, in accordance with the method of accounting regularly employed in keeping such books (provided the method so used is properly applicable in determining the net income of the taxpayer for purposes of taxation), shall in all cases be entered

merchandise, and assuming no responsibility for the collection of accounts. The books were set up on a cash receipts and disbursement method of accounting. Monthly and annual profit and loss statements were prepared on that basis. The partnership income tax returns for all years before 1952 were prepared on the cash basis; the figures used in computing income were taken solely from the cash receipts journal and the cash disbursements journal.

About 1940 the partnership began to make credit sales, and opened a cash receivable ledger for collection purposes. It also maintained a sales journal, in which invoices were listed by number and notations were made as to dates of payments. The entries in this journal were never totaled; they were used for cross-reference purposes only. For some years the inventory consisted solely of V-belts and material left over from such belts. About 1943 the partnership began to take a physical inventory at the end of each year and to prepare, for managerial information and occasionally for bank and credit reports, a balance sheet showing accounts receivable, accounts payable, and inventory. About 1945 the partnership began to make purchases for inventory, but before 1952 it maintained no accounts payable ledger. Neither the accounts receivable ledger, the sales journal nor the inventories were used in computing or reporting income.

The records and returns for 1948 and prior years were examined by an agent of the Internal Revenue Service sometime after 1948. Stanford Brookshire testified that this agent said it would be a good idea for the partnership to go on an accrual basis; the agent did not say that an accrual basis was required, and the returns were accepted on the cash basis. The method was not changed at that time, because the partners did not think it was necessary.[2] The Tax Court found that the cash receipts and disbursements method of accounting clear-

in the return. If for any reason the basis of reporting income subject to tax is changed, the taxpayer shall attach to his return a separate statement setting forth for the taxable year and for the preceding year the classes of items differently treated under the two systems, specifying in particular all amounts duplicated or entirely omitted as the result of such change.

"A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this section, a change in the method of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions, such as a change from cash receipts and disbursements method to the accrual method, or vice versa; * * * Application for permission to change the method of accounting employed and the basis upon which the return is made shall be filed within 90 days after the beginning of the taxable year to be covered by the return. The application shall be accompanied by a statement specifying the classes of items differently treated under the two methods and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change. Permission to change the method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected. * * *

"Sec. 29.41–3. Methods of Accounting. —It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting, as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so. * * * Among the essentials are the following:

"(1) In all cases in which the production, purchase, or sale of merchandise of any kind is an income-producing factor, inventories of the merchandise on hand (including finished goods, work in process, raw materials, and supplies) should be taken at the beginning and end of the year and used in computing the net income of the year * * *."

2. The change was made as of 1 January 1952, when the amount of inventory on hand had greatly increased and it was advantageous to petitioners to make the change, provided they were not required to make the adjustments at issue in this case.

ly reflected the income of the partnership for the years before 1952.

In 1952 a general ledger was set up. Accounts receivable, accounts payable and inventory existing as of 1 January 1952 were entered in this ledger with proper offsetting credits to the partners' capital accounts. The partnership did not request or receive permission from the Commissioner to change its method of accounting and reporting income,[3] but the partnership return for 1952 was prepared and submitted on an accrual basis. In that return the partnership did not include in income the amount of the accounts receivable existing as of 1 January 1952, or the collections thereon during that year; in computing the cost of goods sold, credit was taken for the full amount of inventory on hand 1 January 1952, including items which had been paid for and deducted prior to 1952.

The Commissioner accepted the 1952 return on the accrual basis, but increased the partnership's 1952 income (1) by the amount of the cash collected in 1952 on the accounts receivable representing 1951 sales and (2) by the net amount of the merchandise inventory which had been deducted from income both in 1951

and in 1952.[4] This determination was approved by the Tax Court.[5]

Taxpayers' contention seems to be: that in the years before 1952 the partnership was engaged in the purchase and sale of merchandise to a substantial degree, sold on open account, and had substantial inventories of merchandise and accounts receivable; that under T.R. 111, sec. 29.41–2, the cash method of accounting did not correctly reflect the net income for those years; so, despite the fact that during all of those years it kept its books on the cash basis and deliberately filed its tax returns on the cash basis, its action in so doing was erroneous, and the Commissioner had no right, in the year of change, to increase the income by items which taxpayers contend were properly income of a prior year or years.

Section 41 of the 1939 Code provided that net income should be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer; but "if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income".

3. As required by T.R. 111, Sec. 29.41–2.

4. In explanation of the adjustments made for 1952, the Commissioner stated: " * * * By reason of the change cash in the amount of $32,402.54 collected in 1952 from sales made in 1951 was not included in sales reported in the partnership returns for either year. In order to correctly reflect income it is determined that this amount must be added to taxable income for the year 1952 as a necessary adjustment incident to the partnership's change in its method of accounting. * * * By reason of the change, the merchandise inventory valued at $62,679.22 on January 1, 1952, was deducted from income in the partnership's returns for both of the years 1951 and 1952. In order to correctly reflect income it is determined that partnership is not entitled to the deduction in 1952 of the amount of the previously deducted inventory. As an offsetting adjustment to cost of goods sold it is determined, for the same reason, that the partnership

is entitled to deduct the cost, $10,473.26, of merchandise purchased in 1951 but not paid for until 1952, and which was not deducted in its returns for either year. Accordingly, the cost of goods sold as reported in the 1952 return has been disallowed to the extent of the net amount of these adjustments, or $52,205.56."
  In the alternative, the 90-day letters determined that the partnership income for the years 1950 and 1951 should be adjusted to the accrual basis, plus adjustments for the year 1950 for inventories and accrued accounts receivable (less accounts payable) representing income not previously taxed.

5. The individuals paid the 1951 deficiencies. The petitions filed with the Tax Court related only to the years 1950 and 1952. Since the Tax Court upheld the Commissioner's determination of deficiencies in tax as to the year 1952, it held there was no deficiency for the year 1950, as determined by the Commissioner in the alternative.

During all years before 1952, the books of the partnership were kept on a cash basis. Taxpayers prepared their income tax returns on that basis and they were accepted by the Commissioner, who did not and does not question the adequacy of that basis for the years prior to 1952. T.R. 111, sec. 29.41–2 states in part that "in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method". However, as the Tax Court noted, some reasonable flexibility must be permitted in determining when the purchase and sale of merchandise becomes such an income producing factor as to require the use of inventories and a change to an accrual method, in order to reflect clearly the income of a taxpayer. In some instances either method may clearly reflect the income.

The Tax Court found that the cash method clearly reflected the income of the partnership for the years before 1952. That finding was supported by opinion evidence and by other facts in the record; we cannot say that it was wrong.

Petitioners are not in the position of taxpayers who reported their income *incorrectly* in the past. On the contrary, they are taxpayers who, having kept their books and reported their income *correctly* on the cash basis, *voluntarily* changed their accounting method. Consequently, T.R. 111, sec. 29.41–2 required that they obtain the Commissioner's consent to the change in method and provided that the Commissioner's consent might be conditioned upon adjustments designed to prevent items being "duplicated or entirely omitted as a result of the proposed change". Actually petitioners did not apply for or receive the Commissioner's consent, but their failure to do so did not increase their rights or lessen their obligations. The adjustments required by the Commissioner were designed to prevent items from being duplicated or entirely omitted as a result of the change, and were justified by the facts.

It would be idle to attempt to reconcile all of the cases, but the decisions relied on by petitioners are distinguishable on one or both of two grounds. Some, e. g. Welp v. United States, 8 Cir., 201 F.2d 128, are distinguishable because the changeover was not made *voluntarily* by the taxpayer, but was *required* by the Commissioner. This distinction was emphasized by H.Rep.No.1337, 83d Cong. 2d Sess., 3 U.S.Code Cong. & Adm.News (1954), p. 4017, at page 4303, which proposed the changes made by the 1954 Code. See also Clement A. Bauman, 22 T.C. 7, at page 12.

Other decisions, e. g. Commissioner of Internal Revenue v. Dwyer, 2 Cir., 203 F.2d 522, are distinguishable because, in those cases, the taxpayer had *mistakenly* failed to report income (or had mistakenly taken a deduction) in a year prior to the taxable year, because the taxpayer had failed to employ or apply a correct method of accounting in such prior year. This distinction was noted in Advance Truck Co. v. Commissioner, 9 Cir., 262 F.2d 388, 391.

In Advance Truck, as in the instant case, the taxpayer had properly used the cash method of accounting prior to the taxable year, and accordingly had not reported certain items which were not reportable under that method. The court said: "The accounts receivable of $20,-431.48 had, as stated in Goodrich v. Commissioner, supra [8 Cir., 243 F.2d 686, 691], 'an income status created for them on a cash-realization basis,' under the cash receipts and disbursements method which the petitioner had employed as to them. We are unable to agree with the petitioner that such status was changed simply because the petitioner changed its method of keeping its books of account to the accrual method for the year 1950." 262 F.2d at page 391. In the instant case the Commissioner properly determined that the accounts receivable on the books 1 January 1952 should be considered income as and when they were collected.

The adjustments required by the Commissioner were made to prevent duplica-

tions or omissions resulting from the voluntary changeover. They were not made to correct errors of past years. The Tax Court did not err in approving the determination of the Commissioner.

Affirmed.