UNITED STATES of America,
Appellant,

v.

M. A. LINDNER and Erma Lindner, his
wife, and W. A. Wood and Arrah
Wood, his wife, Appellees.

No. 6844.

United States Court of Appeals
Tenth Circuit.

July 14, 1962.

Lewis, Circuit Judge, dissented.

Joseph Kovner, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Thomas H. McPeters, Attys., Dept. of Justice, Washington, D. C., and William T. Thurman, U. S. Atty., Salt Lake City, Utah, with him on the brief), for appellant.

Arthur H. Nielsen, of Nielson, Conder & Hansen, Salt Lake City, Utah, for appellees.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

The District Director of Internal Revenue for Utah issued deficiency assessments against M. A. Lindner, W. A. Wood, and their wives, for the taxable year 1955. The taxpayers paid the assessments, and brought this action to recover the amounts paid when their claims for refund were disallowed. The United States appeals from a judgment in favor of the taxpayers.

Lindner and Wood were members of a partnership engaged in the sale of trucks and automotive parts. The partnership kept its books and reported its income on a cash receipts and disbursements method of accounting prior to January 1, 1955. In August and September of 1954, an Internal Revenue agent, who was making an audit of the partnership books, advised the partnership that its business was conducted in such a manner that the taxable income of its partners would be clearly reflected only if it maintained its books and reported its income on an accrual basis. After a discussion with the agent, the taxpayers agreed to adopt the accrual method of accounting and to report the partnership's income pursuant to that

method as of January 1, 1955. The question presented [1] is whether the record sustains the trial court's conclusion that because the change in the taxpayers' method of accounting resulted from requirements asserted by a revenue agent it was not initiated by the taxpayer within the meaning of Section 481(a)(2) of the Internal Revenue Code of 1954.[2]

There is an abundance of evidence that the agent told the partnership's bookkeeper and one of the partners that since the business maintained an inventory, Treasury Regulations 111, § 29.41–2(a)(1943) required its books to be kept on an accrual basis, and that the change to the accrual method must be made. It is also quite clear that at the time of the audit the agent had sufficient information to enable the District Director to require a change in the taxpayers' method of accounting by making a deficiency assessment. There was evidence that the partners had no knowledge of the tax consequences of such a change, but relied on the statements of the agent,

and, because of his direction and instruction, agreed with the agent to keep the partnership books and report its income on the accrual basis as of January 1, 1955.[3] This understanding accounts for the delay in making the change, and it disposes of the government's argument that the delay shows that the change was not attributable to the assertions of the agent. In its return for 1955, the year of change, the partnership did not include in its income any amount for accounts receivable which existed on December 31, 1954. The deficiency assessment resulted from the inclusion of the existing accounts receivable in the income for 1955 pursuant to Section 481 (a)(2) of the Internal Revenue Code of 1954.

Prior to 1954, there was no statute comparable to Section 481 of the Internal Revenue Code of 1954. There was a provision similar to Section 446(b) of the Internal Revenue Code of 1954,[4] which was implemented by an administrative regulation providing that permission for a taxpayer to change his

1. The pretrial order stated:

   "Contested Issues of Fact. The sole contested issue of fact is whether the change from the cash to the accrual method of accounting and reporting of income was 'initiated' by the taxpayer within the meaning of Section 481(a)(2), Title 26, U.S.C. and any other applicable statutory provisions, including Section 446 of the 1954 Code."

2. The pertinent part of Section 481 of the Internal Revenue Code of 1954 provides:

   "(a) General rule.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the 'year of the change')—

   "(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

   "(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to

a change in the method of accounting initiated by the taxpayer."

3. The trial court's finding on the question of who initiated the change in the taxpayers' accounting method is sustained by the evidence, and reads:

   "8. Plaintiffs changed their method of accounting and of reporting income in 1955 as a direct result of and in response to the statements and representations of an Internal Revenue agent who was conducting the audit of plaintiffs' books in the fall of 1954 on behalf of the Bureau of Internal Revenue. Said agent informed plaintiffs in substance and effect that the law required and it was necessary for them to change from a cash to an accrual basis in keeping books and reporting income. Plaintiffs in fact believed therefrom that they were required to make the change, and the statements and purported requirements communicated by said agent to the plaintiffs were intended and calculated to induce said change. Had the necessity for said change not have been stated to plaintiffs, no change would have been made in plaintiffs' accounting basis."

4. Int.Rev.Code of 1939, § 41, 53 Stat. 24 (1939).

method of accounting would not be granted "unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected." Treas.Reg. 111 § 29.41–2(c) (1943); Treas.Reg. 118 § 39.41–2(c) (1953). The rule established by the decided cases under the 1939 statute and these regulations was that if the Commissioner required a change in accounting method by asserting a deficiency, he could not include in the year of change income which should have been reported in other years, but that if the taxpayer voluntarily sought permission to change his accounting method, the Commissioner had authority to insist upon appropriate adjustments necessary to prevent some income from escaping taxation because of the change. See, e. g., Commissioner v. O. Liquidating Corp., 3 Cir., 292 F.2d 225, cert. denied 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94; Advance Truck Co. v. Commissioner, 9 Cir., 262 F.2d 388; Goodrich v. Commissioner, 8 Cir., 243 F.2d 686; Commissioner v. Dwyer, 2 Cir., 203 F.2d 522; Caldwell v. Commissioner, 2 Cir., 202 F.2d 112; Welp v. United States, 8 Cir., 201 F.2d 128; Commissioner v. Schuyler, 2 Cir., 196 F.2d 85; Commissioner v. Frame, 3 Cir., 195 F.2d 166; Commissioner v. Mnookin's Estate, 8 Cir., 184 F.2d 89.

In considering the Internal Revenue Code of 1954, the House of Representatives apparently thought that adjustments should be made in the year of change in accounting method without regard to whether the change was requested by the taxpayer or required by the Commissioner. In the House Committee Report it is specifically noted that various court decisions had denied to the Commissioner the right to make necessary adjustments if he required the taxpayer to change his method of accounting. H.R.Rep. No. 1337, 83rd Cong., 2 Sess. 50, A164 (1954), U.S.Code Congressional and Administrative News, p. 4025. The Senate amended the House bill so that the transitional adjustments would not be made for any years prior to those covered by the Internal Revenue Code of 1954. S.Rep. No. 1622, 83rd Cong., 2 Sess. 65, 308 (1954), U.S.Code Congressional and Administrative News, p. 4629. The House agreed to this amendment, H.R.Rep. No. 2543, 83rd Cong., 2 Sess. 45 (1954), and the statute was initially enacted in that form. Internal Revenue Code of 1954, § 481(a) (2), 68A Stat. 160 (1954). Thus at the time the partnership in this case changed its accounting method the statutory language was susceptible to the construction that Congress did not intend that adjustments should be made for taxable years prior to 1954, regardless of who had accomplished the change.

In 1958 the statute was amended to add the language "unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer." [5] It is clear that this amendment was enacted for the purpose of restoring the judicially established rule for taxable years prior to 1954 that adjustments should be made if the taxpayer was the one who sought to change the accounting method. Both the House of Representatives and the Senate reports state that "A change in the taxpayer's method of accounting required by a revenue agent upon examination of the taxpayer's return would not, however, be considered as initiated by the taxpayer." H.R.Rep. No. 775, 85th Cong. 1st Sess. 20 (1957); S.Rep. No. 1983, 85th Cong. 2d Sess. (1958), 3 U.S.Code Cong. and Adm. News, 1958, p. 4834. The trial court relied on this language in holding that the change in accounting method was not initiated by the taxpayers.

■ This statement in the Congressional committee reports appears to anticipate the precise situation presented in this case, and the trial court correctly construed the statute in accordance with the intent of Congress when it determined that the change in accounting method was not initiated by the taxpayers. See Irving Falk, 37 T.C. 1078. The

5. Technical Amendments Act of 1958 § 29(a), 72 Stat. 1626 (1958).

United States earnestly contends that Congress made an erroneous statement in the legislative history since an Internal Revenue agent does not have authority to require a change in accounting method. It argues that, assuming the sufficiency of the evidence to sustain the trial court's findings of fact, the change was not required by the Commissioner through the determination of a deficiency,[6] and therefore, as a matter of law the change must be considered as having been initiated by the taxpayers, regardless of any instructions or directions that the agent may have given them with respect to their method of accounting.[7] The answer to this argument is that the statutory language refers to a change that is initiated by the taxpayer rather than to a change which is required by an Internal Revenue agent. Congress undoubtedly used both the statutory language and the language in its committee reports advisedly. It recognized that in many instances, in dealing with taxpayers whose only contact with the Internal Revenue Service was through him, an examining agent could as a practical matter cause a change in accounting method merely by his insistence that the change be accomplished. In this case the agent emphasized his direction by reliance upon the Treasury Regulations. While the change was not required as a matter of law, it plainly was initiated by the agent, and not the taxpayer, within the usual definition of the word "initiate."[8] Fred P. Purcell, 38 T.C. No. 29, (See 30 U.S.L. Week

2577, May 29, 1962). The phrase "initiated by the taxpayer" in the statute cannot by regulation be changed to read "not required by a deficiency assessment." See, e. g. Commissioner v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127; United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394; Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268; Manhattan Gen. Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267.

The government also raises the proposition that resort should not be had to the legislative history in construing a statute unless the statute is ambiguous, and it cites, as a sample of authority, American Community Builders, Inc. v. Commissioner, 7 Cir., 301 F.2d 7. The clear language of the statute supports the trial court's conclusion in this instance, but the words "initiated by the taxpayer" as used in the context of this statute are subject to varying interpretations in different factual situations. They are not, therefore, completely unambiguous, and the resort to the legislative history by the trial court was proper and appropriate. The legislative history also supports the trial court's determination that the change in accounting method in this case was not initiated by the taxpayers. The deficiency assessments made upon the assumption that the change was initiated by the taxpayers were erroneous.

Affirmed.

6. In its brief, the United States says: "The precise act which accomplishes the change of accounting method is, therefore, the determination of a deficiency by the District Director under the authority granted him by the Secretary in Treasury Regulations on Procedure and Administration (1954 Code), Sec. 301. 6212–1. * * * "

7. The United States contends that the statute is correctly interpreted by Treas. Reg. § 1.481–1(c) which reads as follows:
"(5) A change in the method of accounting initiated by the taxpayer includes not only a change which he orig-

inates by securing the consent of the Commissioner, but also a change from one method of accounting to another made without the advance approval of the Commissioner. A change in the taxpayer's method of accounting required as a result of an examination of the taxpayer's income tax return will not be considered as initiated by the taxpayer. * * * "

8. The definition of "initiate" set forth in Webster's New International Dictionary, 1280, (2d Ed. 1950), is: "To introduce by a first act; to make a beginning with; to originate; begin." See also 21A Words and Phrases, Initiate, 55 (1960).

LEWIS, Circuit Judge (dissenting).

As a matter of daily routine thousands of revenue agents with varying degrees of skill, knowledge and experience conduct audits of taxpayers' books. I am unconvinced that Congress intended that the uncontrolled and unrecorded comments of these agents should trigger the impact of Sec. 481 of the Internal Revenue Code of 1954. Admittedly, examining agents have no authority to *require* a taxpayer to change a method of accounting. To hold, as do the majority, that the comments of these agents can create a binding tax basis is but to invite constant dispute and to create the potential of much mischief.

As I read the main opinion it interprets Sec. 481 as meaning that a change of accounting is "initiated" by an idea. In the case at bar the idea was that of the examining agent. But the first act was that of the taxpayer and to me, and under the definition of initiate approved in the main opinion (see footnote 8), the first act is the guiding incident.

I find no ambiguity in the statute itself. If any ambiguity exists it lies in the Congressional reports. Both have been interpreted sensibly and correctly by Treas.Reg. § 1.481–1(c). See footnote 7.

I would reverse.