**UNITED STATES of America,**
**Appellant,**

v.

**TRANSAMERICA CORPORATION, a**
**corporation, Appellee.**

**No. 19335.**

United States Court of Appeals
Ninth Circuit.

April 12, 1965.

Rehearing Denied June 25, 1965.

Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Richard J. Heiman, Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellant.

George H. Koster, San Francisco, Cal., for appellee.

Before JERTBERG, KOELSCH, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

Three Transamerica subsidiaries filed separate income tax returns for 1953. The returns were prepared on a cash basis, and therefore omitted certain income which accrued to the taxpayers in 1953 but was not actually received until 1954. The income of the three subsidiaries for 1954 was reported in a consolidated return filed on behalf of Transamerica and approximately seventy of its subsidiaries. The consolidated return was prepared on an accrual basis, and therefore the income in question was again omitted because though received in 1954 it had accrued in 1953. The Commissioner of Internal Revenue thought the omitted income should have been included in the consolidated return, and assessed a deficiency. Transamerica paid, and sued for refund in the district court.

The government claims the deficiency assessment was authorized by section 481 (a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 481(a) which provides as follows: "In computing the taxpayer's taxable income for any taxable year * * * (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted * * *."

Thus far, the language of section 481 (a) clearly justified the Commissioner's action. However, the section continues, "except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."

The district court held that this provision excluded the present case from section 481(a) because: (1) the assessment against the subsidiaries was "in respect of" the taxable year 1953 to which section 481(a) did not apply because that section originated in the 1954 Code; and (2) the change in method of accounting from cash to accrual was not "initiated by the taxpayer" but "in practical effect, forced upon it."

I

The government contends that both of the district court's conclusions were wrong. The government argues that the purpose of the exception clause in section 481(a) was to exclude only those adjustments required by the Commissioner to correct errors resulting from the use of an erroneous method of accounting in pre-1954 years. The clause was not intended, continues the government, to

reach the present case in which the item was properly treated under a proper accounting method in 1953, and omitted in 1954 only because the taxpayers had changed their method of accounting. The government also argues that the rationale of this court's decision in Advance Truck Co. v. Commissioner, 262 F.2d 388, 391 (9th Cir. 1958),[1] compels a holding that section 451(a) of the 1954 Code, 26 U.S. C.A. § 451(a), required inclusion of the income in the 1954 return without regard to the reason for its omission from the 1953 returns.[2]

We neither accept nor reject these arguments, for we conclude that in any event the change in accounting method was "initiated by the taxpayer," and section 481(a) therefore provided authority for the adjustment which the Commissioner made. We turn to that issue.

## II

Three possible interpretations of the language "initiated by the taxpayer" in section 481(a) have been suggested.

1. The government has at times urged the view that a change in method of accounting is "initiated by the taxpayer"

unless the change was required by formal action of the Commissioner.[3]

There was no such formal action in the present case.

2. The Tax Court has read the legislative history as indicating that Congress was interested in who originated the change rather than why it was made and that if the taxpayer "took the first step to set the change in motion; without direction from an agent of [the Commissioner], he commenced the change," and hence "initiated" it within the meaning of section 481(a), even if the taxpayer made the change to comply with a statute or regulation. Pursell v. Commissioner, 38 T.C. 263, 274 (1962), affirmed per curiam 315 F.2d 629 (3d Cir. 1963).[4] The applicable Treasury Regulations reflect this interpretation, at least in part.[5]

In the present case the change from cash to accrual accounting was undertaken by the three subsidiaries without request or command of the Commissioner or his agents.

3. Finally, it has been suggested that the phrase "initiated by the taxpayer" implies a free and voluntary choice and

1. See also Brookshire v. Commissioner, 273 F.2d 638, 641–643 (4th Cir. 1960) ; Goodrich v. Commissioner, 243 F.2d 686, 691 (8th Cir. 1957).

2. Sec. 451(a) of the 1954 Code provides:
   "The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period."
   Sec. 42(a) of the 1939 Code, involved in Advance Truck Co., is to the same effect.
   The result of this argument would seem to be not so much that the exception to § 481(a) is inapplicable because the adjustment was not "in respect of" 1953, but rather that this case is controlled by § 451(a) rather than § 481(a).

3. This contention was rejected in United States v. Lindner, 307 F.2d 262, 265 (10th Cir. 1962); and noted but not passed upon in Falk v. Commissioner, 332 F.2d 922, 925 (5th Cir. 1964).

4. See also United States v. Lindner, 307 F.2d 262, 264 (10th Cir. 1962).

5. Treas.Reg. § 1.481–1(c) (5) reads:
   "A change in the method of accounting initiated by the taxpayer includes not only a change which he originates by securing the consent of the Commissioner, but also a change from one method of accounting to another made without the advance approval of the Commissioner. A change in the taxpayer's method of accounting required as a result of an examination of the taxpayer's income tax return will not be considered as initiated by the taxpayer. On the other hand, a taxpayer who, on his own initiative, changes his method of accounting in order to conform to the requirements of any Federal income tax regulation or ruling shall not, merely because of such fact, be considered to have made an involuntary change."

excludes a change adopted by the taxpayer under compulsion of law.[6]

We think the subsidiaries "initiated" the change in their accounting systems under this interpretation as well.

In arguing that the subsidiaries did not voluntarily change their method of accounting, Transamerica points out that both the 1939 and 1954 Codes and regulations required a consolidated return to include every member of the "affiliated group," [7] and further required all group members to adopt a consistent method of accounting unless excepted by the Commissioner.[8] The three subsidiaries were not within the statutory definition of "affiliated group" in 1953, but were placed there in 1954 by an amendment of the statute.[9] Transamerica concludes that the change in accounting method was forced upon the subsidiaries and was not a product of their own preferences.

Perhaps this argument would be sound if the filing of a consolidated return were mandatory. But it was not mandatory. It was a privilege, and the privilege was conditioned upon all members of the affiliated group consenting to the consolidated return regulations,[10] including the regulation requiring the use of a consistent system of accounting by all affiliates.[11] Each of the three subsidiaries filed forms specifically "consenting to the regulations * * * and authorizing the common parent corporation to make a consolidated return on its behalf * * *" as required by Treasury Regulation § 1.1502–12(b).[12] Since the privilege could be freely rejected by Transamerica, the condition attached to its acceptance was not compulsory.

Transamerica contends that Landy Towel & Linen Service, Inc. v. Commissioner, 38 T.C. 296 (1962), affirmed per curiam 317 F.2d 362 (3d Cir. 1963), holds that the filing of a consolidated

6. Pursell v. Commissioner, supra, 38 T.C. 263, 273–274 (1962). The Treasury Regulations also contain language suggesting that the test is whether the change was "voluntary" or "involuntary." Supra, note 5.

7. 26 U.S.C.A. § 1502; Treas.Reg. § 1.-1502–2(b) (1); Int.Rev.Code of 1939, § 141; Treas.Reg. § 39.141–1(c) (5); 8A Mertens, Income Taxation §§ 46.04, 46.-23 (1964).

8. Treas.Reg. 1.1502–44(a), which so provides, was not promulgated until after the date of filing of the consolidated return. However, Treasury Regulation 129, 26 C.F.R. § 24.44(a) (1953), applicable in the interim, contained substantially the same provision.

9. The statutory definition of "affiliated group" applicable in 1953 (Int.Rev.Code of 1939, § 141(d)) required the inclusion of subsidiaries only if 95% of their capital stock was owned by the parent. Sec. 1504(a) of the 1954 Code reduced this figure to 80%. Transamerica's stock interest in each of the three subsidiaries was less than 95% but more than 80%.

10. 26 U.S.C.A. § 1501 reads:
"An affiliated group of corporations shall, subject to the provisions of this

chapter, have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502 prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group."

11. Treas.Reg. § 1.1502–44.

12. Treas.Reg. § 1.1502–12(b), reads in part:
"(b) *Authorizations and consents.* Each subsidiary must prepare duplicate originals of Form 1122, consenting to the regulations under section 1502 and authorizing the common parent corporation to make a consolidated return on its behalf * * *."

return by a parent corporation, without more, binds its subsidiaries to comply with the consolidated return regulations whether or not the subsidiaries consent to the filing of the consolidated return. The holding of Landy was that it was clear from all of the facts "that the filing of the consolidated return by the parent corporation for the year 1954 was intended to be and was in fact an election by the affiliated group of corporations to have their tax computed on the basis of a consolidated return and that the election was authorized and joined in by each of the subsidiary corporations." 38 T.C. at 300. In any event, Transamerica does not contend that the three subsidiaries did not consent to the filing of the consolidated return in the present case, and, as we have noted, each of the three subsidiaries filed forms expressly consenting to be bound by the consolidated return regulations.

■ Thus far we have accepted Transamerica's assumption that the regulations required the three subsidiaries to change their method of accounting upon joining in the consolidated return. That assumption seems unsupported. While it is true that the regulations prohibited some members of the group from reporting on the cash method of accounting while others reported on the accrual method,[13] the decision to change the method used by the three subsidiaries rather than the method used by the other members of the affiliated group was not imposed by statute, regulation, or action of the Commissioner—it was the private decision of the taxpayers themselves. Since the number of affiliated corporations approached seventy, the choice made may well have been motivated by practical necessity, but it was nonetheless a voluntary act.

### III

The language of section 481(a), which excludes pre-1954 adjustments due to a change in method of accounting initiated by the taxpayer, was added to the statute by section 29(a) of the Technical Amendments Act of 1958, Pub.Law 85–866, 72 Stat. 1629, adopted September 2, 1958. The 1958 Amendment was made retroactive to tax years beginning after December 31, 1953, and ending after August 16, 1954. Pub.Law 85–866, § 29(d). In Prather v. Commissioner, 322 F.2d 931 (9th Cir. 1963), we held that the retroactive application of the 1958 amendment was not unconstitutional in view of the provisions of the 1958 Act giving affected taxpayers an option to spread the additional tax over a ten-year period [Pub.Law 85–866, § 29(a)(2); 26 U.S. C.A. § 481(b)(4)] or to return to their former method of accounting and file separate returns. Pub.Law 85–866, § 29(e).

■ Transamerica argues that Prather is inapposite because, under the rule of Landy Towel, supra, 38 T.C. 296 (1962), the filing of a consolidated return by Transamerica precluded the subsidaries from thereafter electing to take advantage of the meliorating provisions of the 1958 amendatory Act. As we have said, aside from other difficulties with the argument, we do not read Landy Towel as appellee reads it. We think the options afforded by the 1958 Act were equally available to all members of the affiliated group. Even if the right to elect were vested solely in the parent, we doubt whether we would be compelled by the corporate fiction to hold that for constitutional purposes the subsidiaries were given no right of election, and to ignore the fact that the decision to be taxed on a consolidated return was compelled by the parent and not by the statute.

Finally, Transamerica contends that the filing of the consolidated return created an agreement between the three subsidiaries and the Commissioner that pre-1954 income omitted as a result of the change in accounting method would be treated as provided in section 481(a) before the 1958 amendment. Transamerica contends that the 1958 Act expressly

---

13. Supra, note 8.

provided that where such an agreement existed the amendment to section 481(a) contained in the 1958 Act should not apply.

The provision of the 1958 Act to which appellee refers is applicable only where "the taxpayer applied for a change in the method of accounting in the manner provided by regulations prescribed by the Secretary of the Treasury or his delegate, and the taxpayer and the Secretary of the Treasury or his delegate agreed to the terms and conditions for making the change." Pub.Law 85–866, § 29(d) (2). The three subsidiaries made no such application; they entered into no such agreement with the Commissioner. These requirements of the 1958 Act were not mere matters of form. It may be safely assumed that if such an application had been made and such an agreement had been entered into, payment of tax on the omitted income would have been among the "terms and conditions" insisted upon by the Commissioner.

Reversed.